259 So.2d 450 (1972)
Murray F. CLEVELAND
v.
CHRYSLER MOTORS CORPORATION and Star Chrysler, Inc.
No. 4842.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1972.
*451 Henican, James & Cleveland, Carl W. Cleveland, New Orleans, for plaintiff-appellee.
Salomon & Farmer, I. Bernard Salomon, Richard I. Farmer, New Orleans, for defendant-appellant.
Before REGAN, REDMANN and BOUTALL, JJ.
REGAN, Judge.
Plaintiff, Murray F. Cleveland,[1] filed this suit against the defendants, Star Chrysler, Inc., an automobile dealer, and Chrysler Motors Corporation, a manufacturer, endeavoring to rescind the sale of a 1966 Chrysler Imperial automobile. Plaintiff explained therein that despite repeated complaints the defendant vendor failed to remedy numerous defects that began to manifest themselves immediately after the car was delivered to him. In the alternative, plaintiff sought a reduction of the purchase price in conformity with the quanti minoris theory. He also requested the rendition of damages in the amount of $2750, representing the cost of repairs and the mental anguish of owning a defective vehicle.
Defendant vendor answered and denied liability; it then asserted that all repairs for which it was responsible under the written contract of warranty between the manufacturer and the vendee had been made. It also pointed out that its liability was limited to the terms of the express warranty.
Defendant manufacturer also answered and denied the existence of any liability on its part.
From a judgment awarding plaintiff $1108.45 in quanti minoris against Star Chrysler, Inc., and dismissing his suit against Chrysler Motor Corporation, the defendant vendor has appealed.
It is quite clear from the testimony and exhibits that the automobile which forms the subject matter of this litigation, is what we colloquially have designated as a lemon. On February 5, 1966, plaintiff paid $6733.45, exclusive of sales tax, for this automobile in which serious defects began to manifest themselves within days of delivery. It is further evident that these vices existed in the vehicle when it was sold. Among the defects that became apparent with use during the first year of ownership were: The windows and the trunk leaked profusely during a rainfall to the extent that the occupants of the car wore raincoats to keep dry while riding therein; the engine stalled frequently, particularly when the air conditioning unit was functioning; the left signal indicator fell off in the plaintiff's hand; the radio worked sporadically; the electric seat adjustment controls malfunctioned; the car rode roughly from the time that it was delivered; the trunk latch stuck; the door on the driver's side was improperly aligned with the body of the car; the windshield *452 washer was inoperative; the windshield wiper control knob fell off; the speedometer cable clicked loudly; the electric windows never opened and closed properly and when they operated they screeched; the tires never maintained an equal air pressure which gave the car a lopsided appearance; and the headlights filled with water due to defective seal beams. The foregoing enumeration is only a part of the exhaustive list of defects that became apparent within several months of the purchase of the car.
The record reflects that the plaintiff exerted every reasonable effort to have these vices remedied by Star Chrysler but defendant failed to effect the necessary repairs. He wrote four letters to defendant within the course of his first year of ownership, itemizing with particularity the difficulties he was experiencing. In each letter he requested the return of the 1962 Chrysler he had traded-in, together with the cash portion of the purchase price, if the defects were not repaired. We note that the warranty repair orders introduced by defendant vendor reflecting service allegedly performed on plaintiff's car do not include a majority of complaints listed in plaintiff's letters.
Within the first twelve months of ownership, plaintiff left his car with the defendant for warranty repairs on eight separate occasions. Not only did he encounter the frustrations of discovering numerous bugs in this automobile, but also, he was the victim of indifferent and ineffective servicing of his complaints. On one occasion he was promised his car, brought in for warranty repairs, would be returned at a given time. When he appeared, the car was not ready, and because he was late for an appointment, an employee of defendant loaned him another vehicle to use. In the course of driving to his appointment, the car ran out of gas. On another occasion, suspecting his car was not being properly serviced, he requested that defendant's service department rotate the tires, marking each before bringing the car in. When he returned, his car was delivered with an invoice for rotating tires. He checked his identification marks and learned that the tires had not been rotated. He then questioned one of the service men as to whether this was done and was assured his tires had been rotated. He then showed his marks to the attendant; the omission was admitted and the charge deducted.
Under the circumstances it is not clear whether defendant could not or simply omitted to remedy many of the defects, but the simple fact remains that when suit was filed on February 3, 1967 the automobile contained numerous vices, namely, it rode "rough"; the windows leaked; the wind rushed in at high speeds; the engine stalled while the car was in operation; and the battery frequently had to be replaced.
At the time of the trial, plaintiff still owned the vehicle and had been driving it for approximately five years. The defects enumerated were still present and a few others had appeared with age.
To support its warranty defense defendant called its service manager, Leroy Mistich as an expert and fact witness. From repair orders, he testified as to what defects were allegedly repaired. He also stated he and a Mr. Hollingsworth with Chrysler Corporation tested the car in May 1967 and found nothing wrong with it other than the sound of wind rushing through the vent window. It is interesting to note that despite the fact he occupied the position of service manager during the year plaintiff was endeavoring to have defendant correct the defects, he had never seen copies of plaintiff's letters enumerating all his complaints in detail. There can be no doubt the letters were received by Star Chrysler since they were delivered through the medium of certified mail and plaintiff produced signed receipts showing they had been received by employees of the defendant.
The lower court obviously rejected the testimony of Mistich and accepted the testimony *453 of plaintiff, which was corroborated in many details by his son, who also had driven the car frequently. The judgment awarded was one in quanti minoris predicated on a finding that "* * * the leakage in the trunk and windows of the car, the poor performance of the electric windows and other continuing defects in the automobile which is established by the record, would make the use of such an expensive car so inconvenient and imperfect that an ordinary buyer would not have purchased the car had he known of the condition complained of". (Emphasis added)
In arriving at the amount of the award, the judge of the lower court subtracted the value of the vehicle at the time of trial which he determined was $1625.00 from the original purchase price of $6733.45, and decided $5108.45 was the diminution to which plaintiff was entitled. Then he gave the defendant a credit of $800 per year for a period of five years, determining this to be the value of the use of the car to plaintiff between the time of purchase and the time of trial.
On appeal, defendant relies solely on the position that plaintiff failed to prove two essential elements of his case by a preponderance of the evidence, in that (1) the defects complained of were not verified by expert testimony, presumably that of an automobile mechanic; and (2) the amount of the reduction to which plaintiff was entitled, if any, was not established.
With respect to the defendant's complaint that the defects were not established by expert testimony but simply attested to by plaintiff and his son, we reject this contention with the observation that it does not require the expertise of a mechanic to detect the numerous deficiencies heretofore described. The buyer of complicated machinery need only establish the vices that exist in an action of redhibition to annul the sale. It is not incumbent upon him to prove the cause of malfunction.[2] In this connection, defendant also argues plaintiff's failure to call a Mr. Whitmeyer, the mechanic who occasionally serviced the automobile after plaintiff refused to return to Star Chrysler, should create the presumption his testimony would be adverse. We fail to see what additional or more convincing evidence Whitmeyer could add to plaintiff's case.
Defendant's second argument directed toward insufficient proof is that the record fails to establish the monetary reduction to which plaintiff is entitled. It is true there is no proof as to the retail value of the automobile at the time of the trial; however, we are of the opinion that an award of $1108.45 is fully supported by the evidence adduced herein.
Plaintiff filed an action in redhibition, which is defined by C.C. article 2520 as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice." (Emphasis added)
Clearly plaintiff herein would have been entitled to a judgment rescinding the sale, as well as one reducing the price in conformity with the theory of quanti minoris. When redhibition applies the seller's obligation is outlined in C.C. article 2531:
"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing * * *."
In this case, the buyer tendered return of the car in writing on several occasions, demanding a refund of the purchase price. *454 Each time his demand was refused and finally, suit was filed almost one year from the date of purchase. If judgment had been rendered in redhibition, it would have clearly exceeded the amount of the award of $1108.45. Unfortunately the question of an increase in the award is not before us since the plaintiff did not appeal.
For the reason assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Pending appeal, plaintiff died. His succession, appearing through his duly qualified testamentary executor, has been substituted as plaintiff in this appeal.
[2] Stumpf v. Metairie Motor Sales, Inc., La.App., 212 So.2d 705.