414 So.2d 872 (1982)
Betty Hopson ANSELMO
v.
CHRYSLER CORPORATION.
No. 12943.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
Adelaide Baudier, Metairie, for plaintiff/appellee.
Kenneth H. LaBorde, McGlinchey, Stafford & Mintz, New Orleans, for defendant/appellant.
Before REDMANN, LOBRANO and AGUSTINE, JJ.
LOBRANO, Judge.
On September 8, 1979, Betty Hopson Anselmo purchased a new 1979 Chrysler Newport from Star Chrysler Plymouth Sales, Inc. On September 10, 1979 she took delivery of the vehicle, and thence began her ordeal which led to the filing of this lawsuit. Plaintiff instituted these proceedings on January 15, 1980 against Star Chrysler Plymouth Sales, Inc. and Chrysler Corporation seeking rescission of the sale and attorney fees because of alleged rehibitory defects. The trial court rendered judgment in favor of plaintiff, Betty Hopson Anselmo, and against Chrysler Corporation[1] rescinding *873 the sale and ordering a return of the purchase price in the amount of $7,651.50, plus interest and costs. The court refused to award attorney fees. From said judgment appellant, Chrysler Corporation, perfects this appeal. Betty Hopson Anselmo answered the appeal seeking an award of damages in the amount of $1,385.00, plus attorney fees in the amount of $2,500.00.
Appellee sought rescission of the sale based on the following defects which she alleges are redhibitory within the meaning of Civil Code Article 2520.[2]
1. Defective transmission
2. Faulty windshield wipers
3. Gas tank leak
4. Faulty Brakes
5. Faulty lights
6. Broken Gas gauge
7. Doors would not open properly or unlock
8. Doorknob came off
9. Plastic bumpers
Appellee's testimony makes it clear to this Court that between September 10, 1979 and November 28, 1979 the car was returned for repairs a minimum of four times, and possibly as many as six. The main concern was the defective transmission. Initially appellee did not pick up the car but had it delivered to her home and parked in her driveway. When she attempted to drive it, she had difficulties with the transmission. She complained of a terrible "growling" type noise and an inability to get it in reverse. The dealer attempted to repair this problem, and the other problems complained of on the numerous times the car was returned.
Appellee's sister, Miss Claudine Hopson, testified that she was familiar with the subject car. Her testimony reflects that it was returned to the dealer for repair at least five times for a variety of problems, including the transmission. This witness had previous mechanical training since she served in a motor pool in the WACS, and testified she could "... take a car apart and put it together again." She accompanied her sister every time the car was returned to the dealer, and stated the problems as follows:
"I drove it. And the transmission growled and it wouldn't go in reverse. There was a gas leak in the gas tank. Part of the windshield wiper knob fell off. The dash lights wouldn't work. It leaked, on the right side especially, both doors and windows. Electrical wiring was all spread out across the rear floorboard. And the bumpers were supposed to have been metal, and they were plastic. You could touch them and they dented the rounded part in the rear. And we went to get the brake tag and they refused us, permanent tag because of the brakes and lights. They were supposed to put in a new gas tank, a new transmission and all of these other repairs, and all they did, I think, was to get grease and everything all over the seat and the floorboard in the front.
Q. To your knowledge was any of these defects in the car corrected prior to it being returned to Star Chrysler the last time?
A. The only thing that I noticed that was corrected was the dash lights. They did come on."
Both appellee and her sister testified that they had difficulties in getting a brake tag, and were successful only after having the persons at the Amoco Station who issued the tags do repair work on the lights and brakes.
Appellee also had an expert mechanic examine the vehicle. His recommendation was that appellee not drive the vehicle because he thought it was dangerous. When *874 asked "... what the problems were," his response was as follows:
"Well, the major problem that I remember when I drove the car, that the car would barely back up. The transmission was slipping so bad it would barely back. After I drove the car, you had to pump the brakes to stop it. None of the lights worked on the car. The turning signal didn't work. There was gas leaking from the gas tank. And I only drove the car for eight blocks, something in that neighborhood."
The "coup de grace" for appellee was November 28, 1979 when the vehicle again failed to go in reverse as she was leaving her daughter and son-in-law's home after a Thanksgiving dinner. The following day a wrecker brought the car to Star Chrysler where it stayed until the day of trial. After that appellee simply refused to accept delivery.
Appellant, Chrysler Corporation, alleges that the trial court erred: (1) in finding that the defects were of such a redhibitory nature as to require a rescission of the sale; and (2) in refusing to view the vehicle on the day of trial. The thrust of appellant's argument is that the defects complained of were of a minor nature and did not render the vehicle unfit for its intended purpose and use. Further it claims that many of the alleged defects did not exist at all. To support this argument, Mr. J. T. Meals, appellant's regional representative inspected the vehicle on January 7, 1980, and "... was unable to find any of these problems." The Supreme Court in the case of Rey v. Cuccia, 298 So.2d 840, 842-843 (La.1979) set forth the current state of our law in regard to actions in redhibition.
"A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold `which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice'. Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La. 1973).
The buyer must prove that the defect existed before the sale was made to him. Article 2530. However, if he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. J.B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbot Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App. 4th Cir. 1968); Fisher v. City Sales and Services, 128 So.2d 790 (La. App. 3d Cir. 1961).
If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries v. Nelson, 46 So.2d 333 (La.App. 1st Cir. 1959); Standard Motor Car Co. v. St. Amant [18 La.App. 298], 134 So. 279 (La. App. 1st Cir. 1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971)."
And as was stated by the author in 50 Tul.L.R. 530 (1976):
"Perhaps a separate category of redhibitory defect is that described as the "lemon" by Louisiana courts. The colloquial expression "lemon" is understood to mean an item plagued by a variety or series of defects. Proof that an item is plagued with minor defects may sustain article 2520's "must be supposed" test and warrant redhibition rather than mere reduction in price. *875 One example of a "lemon" was the automobile in Cleveland v. Chrysler Motors Corp. [259 So.2d 450]. It had a conglomeration of troubles, of which probably none was so serious by itself as to warrant redhibition; the windows and trunk leaked; the engine stalled frequently while idling, especially while the air conditioner was running; a turn signal indicator fell off; the radio worked sporadically; the electric controls for the seat malfunctioned; the car had a rough ride; the trunk latch stuck; a door was improperly aligned; the windshield washer did not work; the speedometer clicked audibly; the electric windows malfunctioned; and the headlights were cracked. The trial judge expressly reasoned that the "must be supposed" test was met: `An ordinary buyer would not have purchased the car had he known of the conditions complained of.' Similarly, the court in Dunlap v. Chrysler Motors Corp. [299 So.2d 495], based redhibition on noises and wheel imbalance, `among other defects'." Id. at 536, 537.

This "Chrysler" certainly was a "lemon" with numerous defects which we have set out. Undoubtedly, Betty Anselmo would not have purchased this automobile had she known of the trouble in store for her.
Civil Code Article 2521 provides: "Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices." La.C.C.Art. 2521. Appellant contends that the problems with the transmission, i.e. the growling noise, and the vehicle stalling, were all apparent defects and would not constitute redhibitory vices. We disagree. A buyer is only under a duty to make an inspection which is reasonable in light of all the circumstances surrounding the sale of the product. Whether an inspection is reasonable depends on the facts and circumstances of each case, and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Additionally a purchaser is not required to examine inner or hidden parts of an object, but must discover what a reasonably prudent purchaser acting under similar circumstances would have discovered. Guillory v. Sarpy, 177 So.2d 403 (4th Cir. 1965). See, Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973) where a defective transmission was held not to be an apparent defect.
The existence of a redhibitory defect is a question for the trial judge and should not be disturbed on appeal in the absence of manifest error. Clinkscales v. Superior Pontiac-GMC., Inc., et al., 365 So.2d 895 (La. App. 4th Cir. 1978).
Here, the trial judge clearly did not abuse his discretion in finding that these defects existed at the time of the sale.
It is well settled in our jurisprudence that the manufacturer is presumed to know of the defect in the thing made by him. Rey, supra. Thus he is considered a bad faith seller and falls within the ambit of the following Civil Code provision. "The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." La.C.C.Art. 2545.
The next issue for our determination is whether the trial judge committed error by not awarding plaintiff attorneys' fees. In his reasons for judgment the trial judge states "... nor has any evidence been introduced with reference to the value of any legal services performed by plaintiff's counsel which would warrant a judgment for attorneys' fees."
Our courts have uniformly held that evidence of the value of an attorney's services is not necessary where the services are rendered under the supervision of the court. The factors to be considered in fixing attorney fees in a redhibition or quanti minoris case are:
(1) the responsibility incurred
(2) the extent and nature of the work performed
(3) the legal know how and skill of counsel Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir. 1975).
In this case the services of plaintiff's attorney were rendered under the eyes of *876 the court and the trial judge should have made an award based on his estimation of their value.
Our review of the record convinces us that an award of attorneys' fees in the amount of $2,500.00 is reasonable considering the amount of recovery allowed, and the time spent by plaintiff's counsel below and on appeal.
Pretermitting the question of whether the trial judge erred in refusing to examine the automobile in question on the day of trial, we hold that his refusal to do so was harmless error, if error at all.
Appellee prays for damages in the amount of $1,385.00. The trial judge refused to grant these damages as no evidence was introduced in support thereof. Our review of the record fails to find any evidence as to the nature of these damages and thus there was no error in the court's refusal to award same to plaintiff.
For the reasons assigned, the judgment appealed from is amended to grant plaintiff the additional sum of $2,500.00 against defendant Chrysler Corporation, as a reasonable attorney fee. As thus amended, and in all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Star Chrysler Plymouth Sales, Inc. did not answer this suit, and were subsequently dismissed from same. It is apparent from the statements made by counsel for Chrysler Corporation that the sales agency went out of business.
[2] "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." L.C. C.Art. 2520.