549 So.2d 428 (1989)
Kathy REILLY
v.
GENE DUCOTE VOLKSWAGEN, INC., and ABC Insurance Corporation.
No. 89-CA-179.
Court of Appeal of Louisiana, Fifth Circuit.
September 5, 1989.
*430 Robert Barnett, New Orleans, for Kathy Reilly plaintiff/appellee.
Eugene M. McEachin, Jr., Metairie, for General Motors defendant/appellant.
William H. Slaughter, III, New Orleans, for Spinato Chrysler Plymouth, Inc. defendant/appellant.
Joseph L. Kreller, Jr., Gretna, for Gene Ducote Volkswagen, Inc. defendant/appellant.
Before KLIEBERT and GOTHARD, JJ., and M. JOSEPH TIEMANN, J. Pro Tem.
M. JOSEPH TIEMANN, Judge Pro Tem.
Plaintiff, Kathy Reilly filed this suit against Gene Ducote Volkswagon, Inc. (Ducote) seeking restitution of the purchase price, costs incurred and damages resulting from her purchase of a 1980 Pontiac Sunbird, or, alternatively for a cancellation/rescission of the sale due to redhibitory defects. After trial on the merits, judgment was rendered in favor of Reilly and against Ducote for $7,815.11 plus court costs and judicial interest from date of demand. Ducote appeals.
FACTS
Kathy Reilly's testimony at trial established that on April 11, 1984, she purchased a 1980 Pontiac Sunbird from Ducote for $2,900.00. She traded in her 1972 Mercury valued at $500.00, gave a further downpayment of $300.00 cash, and financed the remainder of the purchase price. She made seven monthly payments of $129.49 before tendering the car back to Ducote and filing this suit. Included in the payments was a $10.00 monthly charge for a service agreement.
Before she purchased the car she took it for a test drive across the Greater New Orleans Bridge. The car seemed "sluggish" but she attributed this to the fact that it was a four cylinder automobile and she had been used to driving an eight cylinder car. Enroute back to Ducote, the speedometer and odometer stopped working; however, she was assured that they would be fixed. When she took possession of the car, the speedometer and odometer were working and some cosmetic repairs had been made. Lucky Rogers, Ducote's service manager, told her everything in the car "checked out fine". Miss Reilly further testified that she knew of nothing wrong with the car when she purchased it.
Miss Reilly began having trouble with the car only days after it had been purchased. In the 210 days that she dealt with Ducote, the service department had possession of the car for 101 days. The car was brought to be repaired seven times; on four of those occasions the car had to be towed. Miss Reilly did not learn that there was a $50.00 charge per occurrence under her service contract until May 9, 1984 when she picked up her car after the second repair job.
The history of Ducote's servicing of the car is summarized as follows:
April 24, 1984Miss Reilly brought the car in because the engine was hesitating and the front end was shaking. When she picked up the car on the 26th she was told that the brakes had been adjusted and to use super unleaded gasoline as there had been dirt in the carburetor.
May 5, 1984The car was towed in after stopping on the Westbank Expressway. An argument ensued between Miss Reilly and Gene Ducote, Jr. over who was to pay *431 for the tow. Miss Reilly picked up the car on May 9, 1984. She was told that the car stopped because it did not have any oil and that the repairs made involved fixing the starting gear and adding four quarts of oil.
May 30, 1984Miss Reilly brought the car to Ducote because it was hesitating, backfiring and appeared to be burning oil. She also complained that the speedometer and odometer had again stopped working. A part was ordered for the speedometer and odometer. When Miss Reilly picked up the car she waited for fifteen minutes before it was brought to her. She was told that the car had to "warm up".
June 8, 1984After retrieving the car from Ducote, Miss Reilly went to the airport to pick up some relatives. The car stalled several times going to the airport. After leaving the airport, the car stalled three times. After the third time, the car would not start and had to be towed to Ducote. Miss Reilly got the car back on June 13 and was told that the carburetor had been replaced. The speedometer and odometer had not yet been fixed as the part ordered had not yet been received.
July 10, 1984Miss Reilly again brought the car to Ducote because it was hesitating and stalling. She retrieved the car on July 11th and was told that minor adjustments had been made to the carburetor. The speedometer and odometer were still not repaired. Miss Reilly also testified that the stalling problem was worse if she used the air conditioner or if she pressed the brakes too fast. This problem was not corrected.
August 14, 1984After stopping to get gas during the evening the car would not start. Miss Reilly called Ducote the next day and was told she would have to pay to get the car towed. A neighbor helped her tow the car to Ducote on August 17. She picked up the car on August 21 and was told that the carburetor had been rechecked and the starter replaced. Miss Reilly noticed some increase in pickup, however the car was still hesitating and stalling when the brakes were applied.
September 2, 1984 (Labor Day)While Miss Reilly was driving, the car started making a "clunking" noise. It gave one loud knock and died. After contacting Ducote, Miss Reilly brought the keys to them on September 4th. Ducote did not retrieve the car until September 11th. After the car was towed in, Miss Reilly called on several occasions to find out what was wrong. Each time she was told that they were still looking. On October 1st, Ducote told her that the car needed a new engine and that it would not be covered by her warranty. On November 9, 1984, Ducote called Miss Reilly and told her to either pay for the repairs or take the car. Miss Reilly had the partially dismantled car towed to her residence.
Miss Reilly also testified that, prior to November 9th, she attempted to have the sale rescinded and she asked for her old car back. She was told that they no longer had her old car.
Charlie Swain, a sales representative for Ducote, testified that he had taken the car in question for several test drives and found it to be sluggish. As a result, he thought something was wrong with the car and he would steer his customers away from it. He reported his belief to Morris Jones, a sales representative who ran the used car department. Swain assisted Jim Landers in the sale of the car to Miss Reilly, however, he did not tell her that he thought something was wrong with the car. Swain also talked to Rogers the first time the car was towed after the sale. Rogers told him that the car needed a new engine and that they would take care of it.
WAIVER OF WARRANTY
In Louisiana, the seller is bound by an implied warranty that the thing he sold is free of hidden defects and is reasonably fit for the product's intended use. LSA-C.C. arts. 2475, 2476, 2530; Hob's Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974); Rey v. Cuccia, 298 So.2d 840 (La.1974). This warranty may be expressly waived. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973); Hendricks v. Horseless Carriage, Inc., 332 So.2d 892 (La.App. 2 Cir. 1976). In order for a waiver to be effective three elements must be present:
*432 1) The waiver must be written in clear and unambiguous terms;
2) The waiver must be contained in the sale and chattel mortgage document; and
3) The waiver must either be brought to the attention of the buyer or explained to him. Hendricks, supra.
It is the seller who bears the burden of proving that the warranty has been waived. Washington v. Morein Motor Co., Inc., 488 So.2d 325 (La.App. 3d Cir. 1986).
In this case the work order which was completed by salesman Jim Landers contains the following language:

DISCLAIMER OF WARRANTIES
Any warranties on the products sold hereby are those made by the manufacturer. The Seller, Gene Ducote, hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability of fitness for a particular purpose, and Gene Ducote neither assumes nor authorizes any person to assume for it any liability in connection with the sale of said products.
s/ Kathleen M. Reilly 4/11/82
PURCHASER'S SIGNATURE DATE
s/ Kitty Westbrook
DEALER OR HIS AUTHORIZED REPRESENTATIVE
A stamp on the face of the order reads as follows:
Sold with no warranty expressed nor implied by Gene Ducote Volkswagen due to age and/or reduced price of vehicle as per prior agreement between both parties.
s/ Kathleen M. Reilly (Customer)
 s/ Debbie Rhodes (Witness)
The bill of sale contains the following language:
Sold with no warranty expressed nor implied due to age of vehicle and reduced price to customer as per prior agreement between both parties. Vehicle covered by 1 year vangard policy. Warranty subject to provision of vangard policy.
The bill of sale is signed by Jim Landers but not Miss Reilly.
Also in the record is a written "waiver of warranty" in the form of an affidavit which states:

WAIVER OF WARRANTY
It is mutually agreed and understood that: (a) Any warranties, expressed or implied, on the products sold are those made by the Manufacturer, (b) THE SELLER MAKES NO WARRANTIES, expressed nor implied and there is no service contract between the seller and the buyer. (c) Seller expressly disclaims all warranties, merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said product, (d) Buyer will not assert against the Sellor or any future holder or assignee of this contract any claim or further defense which the Buyer may have against the Manufacturer, and (e) Buyer further expressly waives any right that the Buyer may have to demand, as against Seller, an annulment or cancellation of this sale, or a reduction of the purchase price for any reason whatsoever.
THE BUYER EXPRESSLY ACKNOWLEDGES THAT HE HAS READ THE WAIVER OF WARRANTY, HAS HAD SAME EXPLAINED TO HIM, ACCEPTS AND FULLY UNDERSTANDS IT.
s/ Jim Landers
SELLER
s/ Kathleen M. Reilly
BUYER
Sworn to and subscribed before me, Notary, on this 11th day of April, 1984. _________________________
Notary Public
The affidavit was not executed by a Notary Public.
From the foregoing, it is clear that the first two elements of the Hendricks test are met. At issue is whether the waiver was brought to the attention of Miss Reilly or explained to her.
*433 Kathy Reilly testified that she did not read the waiver of warranty provisions, instead she just signed each document where she was told. She also purchased a service agreement "Vangard Service Warranty" upon recommendation of Kitty Westbrook, Ducote's assistant and financial manager, which she believed was a full warranty that would cover any mechanical problem. She did not receive the policy until after the third time the car was returned when she discovered that the warranty was limited and that there was a "per occurrence" service charge.
Charlie Swain testified that he assisted Jim Landers in preparing the paper work for Miss Reilly. At a sale it was normal practice to just tell the customer where to sign. Some customers would read the documents prior to signing and some would not.
Kitty Westbrook testified that she explained to Miss Reilly both the provisions of the Vangard policy and the waiver provisions. She also gave Reilly a copy of the policy.
Ducote argues in brief that the trial judge did not decide this issue as it is not addressed in his reasons for judgment. We believe that the trial judge rejected Ducote's affirmative defense of waiver. "The silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand, in the absence of an express reservation." Ernst v. Bassett, 521 So.2d 414, 415-416 (La.App. 5th Cir. 1988). From the trial judge's implied rejection of the Ducote's affirmative defense, we conclude that he accepted the testimony of Miss Reilly and Charlie Swain and rejected that of Kitty Westbrook. This finding that the waiver was not explained to Miss Reilly is within the discretion of the trial court and should not be reversed unless clearly erroneous. Harvell v. Michelli, 500 So.2d 871 (La.App. 1st Cir.1986).
We find that Miss Reilly did not waive the implied warranty of fitness.
REDHIBITION
To prevail in a redhibitory action, a plaintiff must establish by a preponderance of the evidence 1) that the thing sold has vices or defects which makes it absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed he would not have made the purchase had he known of the defects; 2) that the defects existed at the time of the purchase, but were neither known nor apparent to him; and 3) that the seller would not or could not correct the defects when given the opportunity. LSA-C.C. art 2520; Rosenthal v. Clearview Dodge Sales, Inc., 464 So.2d 777 (La.App. 5th Cir.1985); Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5th Cir.1985). The plaintiff need not introduce expert testimony or prove the precise or underlying cause or defect so long as he shows, by direct or circumstantial evidence, that the thing contained a defect and the defect existed at the time of the sale. Rosenthal v. Clearview Dodge Sales, Inc., supra; Dumond v. Houma Toyota-Inc. A.M.C. Jeep, 470 So.2d 484 (La.App. 1st Cir.1985).
In the present case, the evidence at trial established that after the car arrived at Ducote's lot, salesman Charlie Swain took it for several test drives and found it sluggish. As a result he thought something was wrong with it. When Miss Reilly took the car for a test drive, she noted the hesitation but attributed it to the fact that the car was a four cylinder. At the time of purchase, she was assured by the service manager that nothing was wrong with the car. Thirteen days after Miss Reilly purchased the car, she brought it to Ducote for repairs because the engine was hesitating and the front end was shaking; eleven days later the car was towed to Ducote because it stopped running on the Westbank Expressway. At that time, Swain was told by the service manager that the car needed a new engine. Only after the car was brought to Ducote five more times in five months was Miss Reilly informed that the car needed a new engine and that she would have to pay for it. Ducote's service department had possession of the car for 101 of the 210 days that Miss Reilly owned the car. Based on this evidence, the trial court found that "the *434 problems with the engine of the car at issue existed at the time the car was sold by Gene Ducote, Inc. to Kathy Reilly" and further that "Miss Reilly had neither actual nor constructive knowledge of the defect sufficient to put her on notice because of her lack of expertise in mechanical matters and her reliance on the representations of Gene Ducote, Inc. that there was nothing wrong with the car."
We find no manifest error in the trial court's finding that the car contained a redhibitory defect unknown to Miss Reilly at the time of purchase. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Wheeler v. Clearview Dodge Sales, supra.
SELLER'S KNOWLEDGE OF DEFECT
To recover attorney fees, the buyer must prove that the seller had knowledge of the defect prior to the sale. However, the buyer need not prove willful misrepresentation. It is sufficient if he only shows actual or constructive knowledge by the seller. Accordingly, if the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable for reasonable attorney fees. C.C. art. 2545; Nelkin v. Piotrowski, 448 So.2d 173 (La.App. 5th Cir.1984); Harper v. Coleman Chrysler-Plymouth-Dodge, Inc., 510 So.2d 1366 (La.App. 3d Cir.1987).
The record in this case shows that Charlie Swain knew that something was wrong with the Sunbird and that he informed Morris Jones, another salesman who "basically ran" the used car department. Also, Lucky Rogers told Miss Reilly at the time of sale that everything, including the engine, "checked out fine". However, twenty-five days later, when the car was towed to Ducote for repairs, Rogers told Swain that the car needed a new engine.
We find that Ducote knew or should have known of the defective engine.
REASONABLENESS OF ATTORNEY'S FEES
The factors to be considered by the trial court in determining attorney's fees in a redhibition case are:
(1) the responsibility incurred;
(2) the extent and nature of the work performed;
(3) the legal know how and skill of counsel.
Guillory v. Jim Tatman's Mobile Homes, Inc., 490 So.2d 1185 (La.App. 3d Cir.1986); Anselmo v. Chrysler Corp., 414 So.2d 872 (La.App. 4th Cir.1982), and
(4) the amount of the claim and the amount recovered for the plaintiff. Dunn v. Redman Homes, Inc., 411 So.2d 722 (La.App. 3d Cir.1982).
We have reviewed the record in this case, including the complexity of the issues involved and the time spent by counsel in preparation and at trial. This case was relatively uncomplicated and presented no novel issues. No depositions were taken, discovery was fairly limited and trial was completed in one day. Under these circumstances, we find that the award of $5,000.00 for attorney's fees is excessive and we reduce the award to $2,500.00.
Miss Reilly alleges that she is entitled to additional attorney's fees for the work performed on appeal. However, Miss Reilly neither appealed from the trial court's judgment nor answered the defendant's appeal, but instead only requested the additional fees in brief to this Court. In this circumstance we cannot grant additional fees. La.C.C.P. art. 2133; Anderson v. Visa, Ltd., 478 So.2d 1346 (La.App. 5th Cir.1985).
COSTS
The only costs which can be assessed against a litigant are those provided for by law. Kohlmeyer and Co. v. Sobert, 273 So.2d 884 (La.App. 1st Cir. 1973), affirmed 286 So.2d 342 (La.1973). LSA-R.S. 13:3661 and 13:3671, which provide for the assessment of fees for the testimony of non-expert witnesses, applies to in-state witnesses only. Thus the judgment assessing costs in the amount of $144.25 for the travel expenses of the out-of-state witness is unauthorized and therefore in error. Likewise, there is no statutory authority to assess against defendant *435 costs of $25.00 for plaintiff's appraisal which was not introduced into evidence. We find that the trial court erred in assessing these costs against defendant.
For the reasons assigned above, the trial court's award of $7,815.11 is amended to $7,650.86 to delete costs improperly assessed against Ducote. The award of attorney's fees is reduced to $2,500.00. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.