857 So.2d 1051 (2003)
Perry DAILEY and Shirley Dailey
v.
THE HOME FURNISHINGS STORE d/b/a Halpern's Furniture Store.
No. 2002-CA-1225.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
*1052 Roy M. Bowes, Mark A. Moeller, Roy M. Bowes & Assoc., Gretna, LA, for Plaintiffs/Appellees.
Richard B. Levin, Francis X. deBlanc, III, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge MICHAEL E. KIRBY, Judge, MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
MAX N. TOBIAS, JR., Judge.
The Home Furnishing Store, Inc. appeals a judgment of the First City Court of New Orleans awarding the plaintiffs damages in redhibition for the purchase of defective furniture and attorneys' fees and costs.
On or about 24 January 1998, Perry and Shirley Dailey (hereinafter, collectively, "the Daileys") purchased a sofa, two chairs, and an ottoman from The Home Furnishings Store, Inc. d/b/a Halpern's Furnishing Store (hereinafter, "Halpern's") for the price of $1,623.32. The furniture was to be manufactured in North Carolina and each piece covered in the same run of selected fabric; a Teflon coating was to be applied to the fabric. Mr. Dailey testified that Ms. Halpern[1] assisted him and his wife with the sale and that she advised them to purchase the Teflon coating so that the furniture would be easier to clean. The Daileys were not provided with any written cleaning instructions for the Teflon coated furniture, but were told that the furniture could be easily cleaned.
The furniture was delivered to the Daileys on 28 March 1998. The Daileys were apparently out of town when the furniture was delivered, but a friend stayed at their house and accepted its delivery. The Daileys arrived home and used the furniture for the next few weeks, until 1 May 1998, *1053 when Mr. Dailey discovered a nail protruding from the side of the couch upon which he scratched his arm. Around that same time, Mrs. Dailey noticed that a spring in the sofa was broken or loose. Mr. Dailey testified that on 4 May 1998, he went to Halpern's and expressed his concerns about the sofa. Halpern's agreed to pick up the furniture to assess its condition. When Halpern's picked up the furniture, they left the pillows and the legs of the furniture with the Daileys.
After several days, the furniture was re-delivered to the Daileys. Mr. Dailey testified that when the furniture arrived, it was covered with dirt and dust. Apparently, Mrs. Dailey called Halpern's to complain about the condition of the furniture, and Mrs. Dailey's testimony was that the deliveryman was instructed by a Halpern's representative to wipe off the furniture with a wet rag. When the furniture was so wiped, color from the fabric came off onto the rag, leading the Daileys to suspect that the Teflon coating had not been applied. The Daileys refused to accept delivery of the furniture.
Mr. Dailey spoke with Ms. Halpern about the furniture and agreed to accept a new set of furniture as replacement for the original set. The set Ms. Halpern wished to substitute for the original set was, however, in a different style from the furniture originally purchased, and the Daileys refused to accept the replacement selected. Ms. Halpern suggested re-ordering the original style of furniture, but advised the Daileys that it would be six weeks before they would receive the furniture. The Daileys would not agree to this arrangement because they had guests coming for the Fourth of July and needed living room furniture sooner than could be promised by Halpern's. Mr. Dailey testified that he asked for a refund, and that Ms. Halpern told him that if the furniture were in good condition, a refund would be forthcoming. Halpern's picked up the furniture, but the Daileys did not receive a refund.
After several weeks, the Daileys went to the Halpern's warehouse to meet with Mr. Halpern[2] to discuss the furniture and to point out the problems with it. The Daileys observed that the fabric on the furniture was faded and that the furniture was dusty and dirty. Mr. Halpern apparently disagreed with their assessment of the condition of the furniture and became angry. The Daileys left without a refund.
Frustrated in their attempts to obtain a refund, the Daileys sought legal advice and sent a demand letter to Halpern's by registered mail, which was refused by Halpern's. Apparently, Halpern's subsequently asked the Daileys to inspect the furniture at the Halpern's warehouse a second time to see if they would accept it. The Daileys returned to the Halpern's warehouse on 31 December 1998 and met with Jack Scheurmann,[3] a representative of Halpern's. The Daileys asked Mark Miles, a friend of the family, to accompany them to the meeting and brought along a camera and a white rag to document the problems they had with the furniture. They were not allowed to see the two chairs. Photographs of the furniture were taken, which purportedly show the fading of the fabric.
The Daileys, having failed to receive a refund, consulted legal counsel, who prepared *1054 a petition for redhibition on their behalf and for their signatures. On 27 April 1999, the Daileys filed the petition in proper person in First City Court. Halpern's filed exceptions of vagueness, prescription, no right of action, and no cause of action, and the Daileys responded with a legal memorandum in opposition, again filed in proper person. Following a ruling by the trial court sustaining the exception of vagueness, counsel for the Daileys formally enrolled and filed a supplemental and amending petition praying for relief, including attorneys' fees associated with litigation of the matter.
Only the Daileys, Mark Miles, and Jack Scheurmann testified at trial of 2 February 2001. On the morning of trial, Halpern's filed a motion in limine, seeking to exclude from evidence any bills from the Daileys' counsel dated after 22 February 2000, as counsel for the Daileys had never supplemented their discovery responses and failed to provide any bills beyond that date. Just before trial, counsel for the Daileys delivered to counsel for Halpern's the remainder of the billing statements forming the basis of the Daileys' claim for attorneys' fees. Counsel for Halpern's objected and urged the motion in limine; alternatively, Halpern's moved for a continuance of the trial. Both the motion and continuance were denied. The statements for legal services provided to counsel for Halpern's on the morning of trial totaled approximately three pages, and accounted for approximately $1,767.00 of the $4,983.10 ultimately awarded in attorneys' fees and costs by the Daileys.[4] The trial court allowed counsel for Halpern's a brief amount of time to examine the statements and prepare for trial. On 2 February 2001, the trial court issued judgment in favor of the Daileys, awarding $6,606.42; $1,632.32 was awarded as reimbursement for the cost of the furniture and $4,983.10 was awarded for attorneys' fees and costs. Reasons for judgment and a notice of judgment were issued on 8 February 2001.
Halpern's timely filed a motion for suspensive appeal on 20 February 2001, which was granted on 1 March 2001. La. C.C.P. art. 5002; La. R.S. 1:55. An appeal bond was posted on 6 March 2001. More than three months later (on 7 June 2001), the trial court, on its own motion, amended the judgment to include an award of legal interest from the date of judicial demand. Following the entry of the amended judgment, Halpern's filed a motion for new trial, asserting that both the judgment entered on 8 February 2001 and the amended judgment entered on 7 June 2001 were contrary to the evidence presented at trial. The trial court denied the motion following a hearing, but further amended its judgment to reduce the award of attorneys' fees by $944.25, representing the amount of attorneys' fees incurred by the Daileys' counsel prior to their enrollment as counsel of record.
Once an order for a suspensive appeal is entered and the appeal bond posted, the trial court is divested of jurisdiction over the matter, except for ten limited situations, none of which are applicable to this case. La. C.C.P. art.2088. Thus, every action taken and the judgments rendered by the trial court subsequent to the granting of Halpern's motion for suspensive appeal on 20 February 2001 and the posting of the appeal bond on 6 March 2001 is a nullity, as jurisdiction over the matter lay at that time exclusively with the *1055 court of appeal. As a consequence, the original judgment of 2 February 2001 is the only valid judgment currently in effect and the only judgment we may and do examine on appeal.
Halpern's appeal was lodged in this court on 20 June 2002; on 10 July 2002 the Daileys filed an answer to the appeal,[5] pursuant to La. C.C.P. art. 2133. In their answer, the Daileys moved for (a) an affirmation of the judgments of the trial court, (b) an additional $2,500.00 in attorneys' fees associated with responding to Halpern's appeal, (c) vacating of the judgment entered by the trial court on the motion for new trial, and (d) reinstatement of the original award, plus legal interest. Article 2133 provides that an appellee may answer an appeal if he "desires to have the judgment modified, reversed in part or unless he demands damages against the appellant.... In such cases he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record, whichever is later." La. C.C.P. art. 2133(A) (emphasis added). In the present case, the return date for the appeal was originally set for 23 May 2002. The record was lodged with this court on 20 June 2002. The last date on which an answer to the appeal could have been timely filed by the Daileys was 8 July 2002.[6] Accordingly, the answer to the appeal is untimely. We do not, therefore, address the issues raised or the relief sought by the Daileys in that answer.
Halpern's appeals the original judgment of the trial court, asserting that the trial court erred in finding in favor of the plaintiffs because the record is devoid of evidence to substantiate the ruling. Specifically, Halpern's argues that the action in redhibition is insupportable because (1) the protruding nail and the fading color were insufficient to establish an action for redhibition and (2) the complained-of defects did not exist at the time of delivery of the furniture, as required by Civil Code article 2530. Halpern's further asserts that the attorneys' fees are unreasonable and excessive in light of the amount of the principal judgment. Halpern's also argues that the trial court erred in denying its motion in limine, thereby improperly considering additional billing statements not provided prior to trial as required by the rules of discovery, thereby dramatically increasing the amount of the award. Finally, Halpern's argues that the trial court erred in issuing an amended judgment awarding legal interest from the date of judicial demand after an order for a suspensive appeal had been granted and the appeal bond posted.[7]
Under Louisiana law, a seller warrants a buyer against any redhibitory defect in the thing sold. A defect is redhibitory when "it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of the defect gives a buyer the right to obtain rescission of the sale." La. C.C. art. 2520. Further, a defect is redhibitory if "without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have *1056 bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price." La. C.C. art. 2520. The defect must have existed at the time of sale; however, the existence of the defect within three days of sale creates a presumption that the defect existed at the time of the sale. La. C.C. art. 2530.
Halpern's argues that neither the protruding nail nor the damaged spring were sufficient to constitute redhibitory defects that would justify rescinding the sale. Halpern's further argues that the first discovery of any defect was six weeks after delivery of the furniture and that no evidence was presented to create the presumption that the defect existed at the time of the sale. It additionally argues that once notified of the defect, it attempted to cure the defect and offered an entire replacement set of furniture that was refused by the Daileys.
Whether any complained-of defect of a thing that is the subject of a sale is redhibitory is a question of fact. A finding of fact by the trier of fact may not be overturned on appeal absent manifest error or a finding that the trial court was clearly wrong. Gaston v. Bobby Johnson Equipment Co., Inc., 34,028 (La.App. 2 Cir.11/3/00), 771 So.2d 848, 852; Rhodes v. All Star Ford, Inc., 599 So.2d 812, 814 (La.App. 1 Cir.1992); Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311.
The trial court found that the nail and the loose spring were sufficient to constitute redhibitory defects, but did not elaborate. Although the defects would seem minor, when taken into consideration with the fading color and non-colorfastness of the fabric covering, we do not find the trial court was clearly wrong or manifestly erroneous in finding them redhibitory. The Daileys testified that they had just moved into their house and needed the living room suite in time for the Fourth of July holiday, when they were expecting guests, indicating that such was one of the motivations behind purchasing the furniture. They further testified that they would not have purchased the furniture with the protruding nail and the loose spring, and that the fading fabric also rendered the furniture wholly undesirable for its intended use. The trial court specifically found that the Daileys were credible in their testimony. Halpern's, to discredit the Daileys, offered no evidence or testimony. We find, therefore, that the ruling of the trial court that the furniture contained redhibitory defects was not clearly wrong.
Further, Halpern's argues that the defects complained-of did not manifest themselves until six weeks after delivery of the furniture and that insufficient evidence was presented to infer that the defects existed at the time of the sale. A buyer may create a reasonable inference that a later-discovered defect existed at the time of the sale through circumstantial evidence. Rey v. Cuccia, 298 So.2d 840, 843 (La.1974). Redhibitory defects are presumed to have pre-existed the sale if they appeared within three days of the sale. La. C.C. art. 2530. "Later-appearing defects do not enjoy that status as a matter of law, but in the absence of other explanation, defects which do not usually result from ordinary use for the time passed may be inferred to have pre-existed the sale." Perrin v. Read Imports, Inc., 359 So.2d 738, 741 (La.App. 4 Cir.1978), citing, Moreno's, Inc. v. Lake Charles Catholic H.S., Inc., 315 So.2d 660 (La.1975) (air conditioning compressor which failed after 2.5 years held defective at time of sale). Although no evidence was presented as to the exact cause of the protruding nail or the loose spring, or of the problems with the fabric covering the furniture, we note *1057 that Halpern's offered no evidence to suggest that these defects did not exist or that any conduct of the Daileys might have caused the defects. In light of the Daileys' uncontroverted testimony regarding their use of the furniture and the nature of the defects, we do not find that the trial court was manifestly erroneous or clearly wrong in finding (if only by implication) that the redhibitory defects existed at the time the Daileys received the furniture.[8]
Halpern's further argues that, even if the furniture is found to have had any redhibitory defect(s), Halpern's is due a credit for the amount of use the Daileys enjoyed from the furniture prior to returning it. In a redhibition action, "the grant of a credit for the buyer's use is discretionary with the trial court." Guillory v. Jim Tatman's Mobile Homes, Inc., 490 So.2d 1185, 1189 (La.App. 3 Cir.1986), citing, DeBlieux v. Arkla Industries, Inc., 390 So.2d 233 (La.App. 3 Cir.1980). In Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978), the Supreme Court held that "credit for a purchaser's use of a product may be proper in certain instances" but that "[c]ompensation for the buyers use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair." As the Daileys testified that they were both out of town for at least a portion of the six weeks that they possessed the furniture, and as they testified that they did not have small children in the house during those six weeks, it appears that the furniture was not used extensively before the defects were noticed. As Halpern's was unable to deliver the furniture in a satisfactory condition despite having weeks to cure the defects and as to this day the Daileys have use of neither the furniture nor the funds used to purchase the furniture, we do not find that the trial court was manifestly erroneous in refusing to grant a credit to Halpern's for the use of the furniture.
Halpern's further takes issue with the award of attorneys' fees to the Daileys, which essentially totals three times the amount of the principal judgment. Halpern's asserts that the fees are unreasonable in light of (1) the relatively simple subject matter of the case; (2) the fact that counsel for the Daileys did not enroll until the supplemental and amending petition was filed; and (3) the fact that the Daileys never supplemented their discovery responses as required by the Code of Civil Procedure.
Contrariwise, the Daileys argue that the trial court did not abuse its discretion in its award of attorneys' fees. They note that the billing statements document the work performed and billed by their counsel. They assert that the bills reflect that counsel billed the Daileys for 26.05 hours of legal work on this matter between 21 April 1999 and 1 February 2001 at a rate of either $115.00 or $125.00 per hour.[9] They further assert that during the entire *1058 course of the litigation, their counsel performed such work as conferring with them, drafting the petition in redhibition, responding to exceptions filed by Halpern's, responding to written discovery propounded by Halpern's, preparation for trial, and correspondence with opposing counsel. The Daileys maintain that in order to be made whole, it only follows that they should be awarded the money expended by them in this litigation to recover the amount owed them by Halpern's. See, Verbick v. R.G.C. Investments, Inc., 477 So.2d 858 (La.App. 5 Cir.1985).[10]
In a redhibition action, a successful plaintiff may recover reasonable attorneys' fees expended in bringing the action if the seller knew or should have known of the defect in the object or thing that is the subject of the sale. La. C.C. art. 2545. When awarding attorneys' fees, a trial court should take into consideration the following factors: (1) the responsibility incurred; (2) the extent and nature of the work performed; and (3) the legal know-how and skill of counsel. Anselmo v. Chrysler Corp., 414 So.2d 872, 875 (La. App. 4 Cir.1982), citing Dunn v. Redman Homes, Inc., 411 So.2d 722 (La.App. 3 Cir.1982). In Anselmo, the court in awarding $2,500.00 in attorneys' fees also took into account the amount recovered by the plaintiff on the main demand, which was $7,651.50. Id. at 876. In Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428, 434 (La.App. 5 Cir.1989), the trial court awarded $5,000.00 in attorneys' fees on a redhibition action in which $7,650.86 was ultimately recovered as reimbursement for the sale price. The court of appeal, using the factors discussed above, determined that given the relatively simple nature of the case and the amount at stake between the litigants, $5,000.00 was an unreasonably high award for attorneys' fees and reduced the award to $2,500.00.
In J.T. Wheat v. Boutte Auto Sales, 355 So.2d 611 (La.App. 4 Cir.1978), the court reduced an award of $2,000.00 in attorneys' fees arising from a redhibition claim involving the sale of an automobile for $3,000.00. The award for attorneys' fees was reduced to $1,000.00; the court noted in its opinion that the small amount of money involved in the case coupled with the relatively simple subject matter of the case did not warrant an award of $2,000.00.
In addition to pointing to the disparate amounts awarded for redhibition and attorneys' fees in this case, Halpern's argues that the Daileys should not recoup attorneys' fees for the period of time during which they appeared in proper person. We can find no legal authority to support such a stance. We find no statutory or ethical impediment to awarding attorneys' fees for the period of time expended by an attorney prior to his or her enrolling as counsel of record for a party.[11] Further, counsel's billing statements, which are in part provided in the record, reflect bills sent to the Daileys for work done on this matter which are dated as early as 9 April 1999 and which reflect that the Daileys paid a retainer on 2 April 1999. These statements, when taken into consideration with the testimony of the Daileys that *1059 their attorney assisted them with the initial pleadings and advised them prior to enrolling in the suit, leave us no other choice but to accept the amounts billed as evidence of attorneys' fees incurred in this suit by the Daileys.
Although it might seem incongruous to award attorneys' fees for a period of time during which the Daileys were, for whatever reason, ostensibly representing themselves in the litigation, the fact remains that the Daileys have put forth sufficient evidence to support an award of attorneys' fees for that time because their counsel was advising them and preparing pleadings and a memorandum of law.
A trial court has great discretion in awarding attorneys' fees in a redhibition case. Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980). We note that there is no documentation in the record to substantiate the 26.05 billable hours claimed by counsel for the Daileys in the appellate brief. However, we infer from the record on appeal and the transcripts of the proceedings that the trial court accepted this figure, and further awarded additional attorneys' fees for time billed for trial preparation and the trial. Given the Daileys' counsel's billable rate and given the uncontroverted amount of billable amount of time claimed, the ultimate amount of attorneys' fees and costs awarded does not seem unreasonable. We note that Halpern's has not asserted that the attorneys' fees awarded are arbitrary or unsupported by legal documentation; simply that they are unreasonable in light of the amount of the principal demand. As there is no contention by Halpern's that the amount of attorneys' fees and costs awarded are unsupported by either the record or evidence presented at trial by the Daileys, there seems to be no dispute as to the verifiability of the amount of attorneys' fees awarded by the court. Thus, although this case is a relatively simple one, and although the attorneys' fees awarded seem exorbitant at first blush, we note that this case was litigated for almost two years prior to trial and that there is no contention that the actual amount of time billed to the case by counsel for the Daileys is unreasonable or that counsel's hourly rate was unreasonable.[12]
Halpern's argues that the trial court committed error when it denied its motion in limine filed on the morning of trial regarding billing statements not produced timely during discovery. The trial court entertained oral argument, denied the motion, and allowed introduction into evidence of the late-produced billing statements. Although it is troubling that counsel for the Daileys could not produce all of the billing statements for this litigation in a timely fashion such that counsel for Halpern's could have them to prepare for trial and to be placed on notice of the amount ultimately claimed in attorneys' fees, we note that a trial court has vast discretion in ruling on discovery matters. Jones v. Peyton Place, Inc., 95-0574 (La. App. 4 Cir. 5/22/96), 675 So.2d 754. Although we do not approve of "trial by ambush," we find it difficult to believe that counsel for Halpern's could not have anticipated that the attorneys' fees sought in this case would exceed those documented in the Daileys discovery responses. A substantial portion of time had elapsed and further litigation events had taken place since the date of the last statement provided to Halpern's that would naturally give rise to billable hours for the Daileys' *1060 attorneys. Thus, although we take a dim view of the withholding of discovery responses, we do not find that the trial court abused its discretion in allowing the disputed billing statements to be admitted.
Both the Daileys and Halpern's point to Louisiana case law that illustrates awards of attorneys' fees both larger and smaller than the main demand in redhibition and we are cognizant that this determination is fact sensitive. It is due to the great discretion vested in the trial court in these matters, as well as the very fact intensive nature of the inquiry, that we are unable to find that the trial court abused its discretion in its award for attorneys' fees. The fees and costs that substantiate the award were documented, submitted to the court, and evaluated by the trial judge.
Although the Daileys seek from this court an additional $2,500.00 in attorneys' fees associated with this appeal and an award of judicial interest from the date of judicial demand, because they have neither appealed themselves or timely answered the appeal, we cannot address them. Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d at 434, citing, La. C.C.P. art. 2133 and Anderson v. Visa, Ltd., 478 So.2d 1346 (La.App. 5 Cir.1985).
After careful consideration, we find that the trial court did not commit manifest error in finding that the defects in the furniture constituted redhibitory defects. The trial court did, however, err in amending its judgment and entertaining a motion for new trial following the granting of a suspensive appeal. To that effect, we vacate the amended judgment of the trial court dated 7 June 2001, as well as the judgment adjudicating the motion for new trial and amending the judgment yet again on 20 August 2001. We affirm the trial court's judgment of 2 February 2001. We decline to award additional attorneys' fees for the legal work performed post-trial, and further decline to award legal interest from the date of judicial demand.
AFFIRMED IN PART; VACATED IN PART.
NOTES
[1] Although Ms. Halpern is not identified more specifically in Mr. Dailey's trial testimony, we note that the sales receipt identifies Theone M. Halpern as the sales associate who assisted the Daileys with the purchase of the furniture.
[2] Mr. Dailey does not give Mr. Halpern's first name at trial and there is nothing in the record to indicate Mr. Halpern's full name.
[3] The trial transcript identifies this witness as "Jack Scheurmann," the judge in her reasons for judgment identifies him as Jack Schulman. Although there is no other indication in the record as to the true surname of this witness, we refer to him as Jack Scheurmann.
[4] The billing statements in question representing legal work done from 22 February 2000 up to the day of trial are not a part of the record on appeal. The amount of attorneys' fees represented by these contested statements is taken from the transcript for the hearing of the motion in limine
[5] The Daileys answer to the appeal was postmarked 10 July 2002 and received by this court on 12 July 2002.
[6] We note that Friday, 5 July 2002, the date that the answer would ordinarily be due, was a holiday and this court was closed.
[7] Halpern's further argues that the Daileys' answer to appeal was not timely filed and should not be considered. That issue is mooted by our discussion above.
[8] The trial court does not specifically make a finding regarding the existence of the defects at the time the furniture was delivered to the Daileys. Rather the court finds that although Halpern's had "moved for a dismissal after the plaintiffs presented their case, on the grounds that the nail and spring did not amount to redhibitory defects and that plaintiffs' case had prescribed, being filed more than one year after the purchase date. Plaintiffs correctly argued to the contrary, that prescription begins to run upon plaintiffs discovery of the defect and cited La. C.C. art. 2534."
[9] The Daileys note in their brief that plaintiffs' counsel's hourly rate increased sometime after 1 June 1999.
[10] "While courts are not bound by such private contracts and may award such amount as the court feels is just and proper under the circumstances of each case, the award should still be a meaningful reimbursement to plaintiff for the legal expenses that he has been forced to incur because of the actions of the defendant. Verbick, 477 So.2d at 862.
[11] We note that had counsel for the Daileys never enrolled after advising them, preparing the petition for damages, and preparing the response to the exceptions, counsel would have been entitled to intervene in the litigation to recover fees for work done on the case. La. R.S. 37:218.
[12] In fact, we note that the trial court explicitly gave counsel for Halpern's the opportunity to call counsel for the Daileys as a witness at trial to cross-examine him on the contents of the billing statements, but counsel for Halpern's did not elect to do so.