396 So.2d 499 (1981)
Succession of Arthur ACOSTA.
No. 12189.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1981.
*500 Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Max Nathan, Jr., Carole Cukell Neff, New Orleans, for appellant Mrs. Albertha Acosta.
Elmer R. Tapper, Chalmette, for Estate of Arthur Acosta, appellee.
Tom W. Thornhill, Slidell, for appellees.
George J. Dowd, New Orleans, for appellee John Martinez.
Before GULOTTA, BOUTALL and HUGHES, JJ.
GULOTTA, Judge.
Appealing from a judgment on a rule to traverse the inventory of her husband's succession, Mrs. Albertha Acosta, the widow of Arthur Acosta, complains that the trial court erroneously characterized contracts with Exxon for distribution of oil products as community property. It is Mrs. Acosta's contention that she entered into the contracts after the death of her husband and that they are, therefore, her separate property and not an asset of the Acosta succession. We agree.
In 1942, Arthur Acosta, sole proprietor, commenced business as a distributor of Exxon gasoline and petroleum products. In operating the business, Arthur entered into successive annual distribution or sales agreements with Exxon Corporation, which set forth the quantities of gasoline, oil, and other products that would be delivered to Acosta. The contract was re-negotiated each year and each annual agreement was signed by Arthur.
In 1977, Arthur incorporated his business with an initial cash capitalization of $12,000.00. The two principal shareholders were Arthur and one John Martinez, who earlier had worked in Arthur's business part time. It was Arthur's intention in incorporating that Exxon would enter into the annual distribution and sales contracts with the corporation rather than Arthur individually. Exxon refused to do so, however, and required that Arthur continue to sign the agreement individually.
When Arthur died on December 24, 1978, a distribution agreement dated May 18, 1978 between Exxon Company, U. S. A. and Arthur Acosta was in effect. It continued until expiration on March 31, 1979.
On April 24, 1979, Exxon and Mrs. Acosta entered into a new sales agreement effective April 1, 1979 and running through March 31, 1980. This one year contract, although similar to the prior contracts signed by Arthur in many respects, set forth different quantities of fuel, new prices, payment and terms of delivery of petroleum products.
On December 4, 1979, Albertha entered into a new distributor agreement with Exxon effective from April 1, 1979 until March 31, 1980. According to the testimony of the Exxon representative, this contract, while having the same effective date as the previous one signed by Albertha, reflected new Exxon policies. This third contract likewise set forth the rights and obligations of the parties and contained attached schedules setting forth the price, quantity and terms of delivery of petroleum products.
On April 10, 1979, John Martinez filed an intervention in the succession proceedings and alleged that he was one-half owner of Arthur Acosta, Inc., the Exxon distribution business. On July 17, 1979, an inventory of Arthur's assets and liabilities was filed. Concerning the succession's interest in the business, the inventory stated:
*501 "VII. BUSINESS
Arthur Acosta or Arthur Acosta, Inc., Exxon Distributorship (the ownership of this business is in contest and, therefore, the value of the interest of the estate has not been put in this inventory pending the decision of the court as to the division of the interest.)"
On October 9, 1979, Albertha in a rule to traverse the inventory alleged that the Exxon distributorship was her separate property, not part of the community that had existed between Arthur and her, and that John Martinez had no interest in it.
The trial judge held that the corporation was in existence; that John Martinez was an owner of a one-half interest in the corporation; and, that the Exxon contracts were not a corporate asset but were the community property of Arthur and Albertha.[1]
No appeal has been taken by John Martinez from that part of the decree which holds that the contracts are not corporate assets. Accordingly, this holding is final.
The issue confronting us is whether contracts entered into by a decedent's widow subsequent to decedent's death are community assets and as such form a part of the succession or constitute the separate property of the decedent's widow. The trial judge concluded that these contracts are community assets. We reverse.
Well settled is the rule that the community of acquets and gains existing between the spouses terminates on the death of one of them. See LSA-C.C. art. 136, 2402, 2405 and 2406. See also, Succession of Butler, 147 So.2d 684 (La.App. 4th Cir. 1962), application denied, 244 La. 117, 150 So.2d 584 (1963); Golding v. Golding, 43 La.Ann. 555, 9 So. 638 (1891).[2]
The distribution contract signed by Arthur in the year prior to his death came into being during the existence of the community. The rights flowing from that agreement are assets of the community. The obligations under the agreement, likewise, are community responsibilities. On the other hand, the two contracts signed by Albertha and Exxon came into existence after Arthur's death. These were signed by Albertha individually subsequent to the termination of the community. Albertha is designated as "buyer" in these two distribution agreements which set forth quantities of product, prices, and other provisions differing from the previous agreements signed by Arthur. They are separate contracts, each with a definitive term of duration; they are not merely modifications or continuations of Arthur's prior agreement.
Exxon's sales representative, Edwin Simmons, testified that Exxon exercised a corporate preference of dealing with a distributor's widow rather than some other individual, and did not choose to contract with Arthur Acosta, Inc. Clearly the two distribution agreements signed by Albertha create obligations and rights in favor of her as an individual, not in favor of the community that had ceased to exist upon Arthur's death. Although they are not exactly on point, we find support for our conclusion in two old cases. See Succession of Blancand, 48 La.Ann. 578, 19 So. 683 (1896), and Stehr Auto Sheet Metal Works v. Pacholik, 148 So. 482 (La.App. 2nd Cir. 1933).
We reject the arguments of the estate and the legatees of Arthur Acosta that because Mrs. Acosta, after decedent's death, used her husband's equipment and availed herself of her husband's customers, goodwill and reputation, the succession is entitled to benefits from the rewards flowing from the two contracts entered into by Mrs. Acosta with Exxon subsequent to Arthur's death. We have no quarrel with the succession's argument that the marital community has fictious existence for the purpose of liquidation *502 and settlement of community debts after the dissolution by death of one of the spouses,[3] however, this contention relates to the settlement of the community's obligation and debt prior to the termination of the community. This fictious existence of the matrimonial community does not extend into contracts and obligations executed by one of the spouses after the termination of the community.
A conclusion that the contracts entered into by Mrs. Acosta with Exxon subsequent to Arthur's death are her separate property does not deprive the decedent's estate or the corporation from asserting a claim against Mrs. Acosta for the use of the corporate or estate's equipment or other assets. The corporate stock is a community asset. The succession or the corporation may or may not have some claim against Mrs. Acosta for use of the equipment or anything of value belonging to the corporation or the community that has been used by her, subsequent to Arthur's death, in carrying out the Exxon contracts or in any other business enterprise. These questions, however, are not before us in this appeal.
We hold that the contracts entered into by Mrs. Albertha Acosta subsequent to the death of Arthur Acosta are the separate property of the wife and form no part of the Succession of Acosta. Accordingly, the judgment of the trial court decreeing that the contracts are community property is reversed and set aside. Judgment is now rendered in favor of Albertha Acosta and against the Succession of Acosta decreeing that the Exxon contracts executed by Mrs. Acosta subsequent to the date of death of the decedent are the separate property of Mrs. Acosta. In all other respects the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] The August 21, 1980 judgment stated that Arthur's estate and Martinez each owned a one-half interest in the corporation. On September 18, 1980, the trial court amended its judgment to state that Martinez had a one-half interest, that Arthur's estate owned a one-fourth interest, and that Albertha owned a one-fourth interest.
[2] LSA-C.C. art. 2356, effective January 1, 1980, now provides, inter alia, that the legal regime of community property terminates by the death of a spouse.
[3] See LSA-C.C. art. 2409 and Demoruelle v. Allen, 218 La. 603, 50 So.2d 208 (1950); Washington v. Palmer, 213 La. 79, 34 So.2d 382 (1948).