WARD, Judge.
This appeal involves a dispute over funds left after the liquidation of a business, an Exxon distributorship which was operated from 1947 to 1977 as a sole proprietorship owned by Arthur Acosta. In 1977, a corporation was formed to operate the distribu *1182 torship business. One half of the initial capital funds was contributed by Arthur and his wife, Albertha. The other half was contributed by John Martinez, who now claims he has a right to one-half of the funds left in the hands of the liquidator of the business.
The Trial Court held that Martinez is not entitled to funds left in the hands of the liquidator because the corporation never assumed the distributorship, rather the business continued to operate as a sole proprietorship even after the filing of the incorporation papers. The corporation never acquired any other assets, and even though the sole proprietorship of Arthur Acosta used the name, Arthur Acosta, Inc., the Trial Court found that the business continued as a separate entity from the corporation, whose purpose was never fulfilled.
The Trial Court found that, “The distributorship business that had been in existence for over 30 years when Mr. Martinez was employed continued to operate its business in the same manner subsequent to Mr. Martinez’s employment as it had previously and that Mr. Martinez merely served in the capacity of an employee in the business .... ”
Additionally, the Trial Court found that after Arthur Acosta’s death, the business was operated by Mrs. Acosta in the form of a sole proprietorship and constituted her separate property. Most importantly, the Trial Court found that the Exxon contracts were the essence of the business. Martinez has appealed the Trial Court’s decision.
For the following reasons, we affirm the Trial Court’s holding that Martinez is not entitled to one-half of the funds remaining after the liquidation of the business, that he is entitled only to the refund of his contribution to the capitalization of a corporation that never became operative.
Arthur Acosta, the sole proprietor of the business from 1947 to 1977, died on September 24,1978. Prior to the liquidation of the business in June, 1979, in Succession of Arthur Acosta, 396 So.2d 499 (La.App. 4th Cir.1981), this Court had occasion to consider some of the facts pertinent to our review of the instant case. In the earlier case, an inventory was filed in the Succession proceedings and it contained the following item:
“VII. BUSINESS — Arthur Acosta and Arthur Acosta, Inc., Exxon Distributorship (the ownership of this business is in contest and, therefore, the value of the interest of the estate has not been put in this inventory pending the decision of the court as to the division of the interest.)”
Albertha Acosta filed a rule to traverse the inventory, alleging that the Exxon distributorship was her separate property and that John Martinez had no interest in it. The Trial Court held that a corporation, Arthur Acosta, Inc., was in existence and that John Martinez was an owner of one-half interest in that corporation. The Trial Court also held that the Exxon contracts were not a corporate asset but were the community property of Arthur and Albertha.
On appeal, this Court reversed the Trial Court’s finding that the Exxon contracts were' community property and found them to be the separate property of Albertha Acosta. Significantly, no appeal was taken by John Martinez from the Trial Court’s judgment that the Exxon contracts are not Corporate assets.
These additional facts shed light on the background of the current litigation. This Court’s earlier opinion in Succession of Arthur Acosta, supra, found:
In 1942, Arthur Acosta, sole proprietor, commenced business as a distributor of Exxon gasoline and petroleum products. In operating the business, Arthur entered into successive annual distribution or sales agreements with Exxon Corporation, which set forth the quantities of gasoline, oil, and other products that would be delivered to Acosta. The contract was re-negotiated each year and each annual agreement was signed by Arthur.
In 1977, Arthur incorporated his business with an initial cash capitalization of $12,000. The two principal shareholders were Arthur and one John Martinez, who *1183 earlier had worked in Arthur’s business part time. In was Arthur’s intention in incorporating that Exxon would enter into the annual distribution and sales contracts with the corporation rather than Arthur individually. Exxon refused to do so, however, and required that Arthur continue to sign the agreement individually.
When Arthur died on December 24, 1978, a distribution agreement dated May 18,1978 between Exxon Company, U.S.A. and Arthur Acosta was in effect. It continued until expiration on March 31,1979.
On April 24, 1979, Exxon and Mrs. Acosta entered into a new sales agreement effective April 1, 1979 and running through March 31, 1980.
In the instant case, Martinez argues that Arthur Acosta and his wife, Albertha, formed a contract with him under which they promised to transfer to him one-half ownership in the petroleum products distribution business in exchange for his services and six thousand dollars. The record reveals that Martinez and the Acostas discussed the possibility of Martinez acquiring an ownership interest in the business. As a result of these discussions, Martinez made out a six thousand dollar check to Arthur Acosta on January 27, 1977. This check was deposited into a personal bank account of the decedent but it was carried on the books of the corporation as part of the original capitalization of the corporation, Arthur Acosta, Inc. This was the factual basis for this Court’s earlier holding in Succession of Arthur Acosta, supra, that Martinez is an owner of a one-half interest in the corporation.
According to the evidence, Martinez understood that his six thousand dollar cash contribution was to form one-half of the capitalization for the corporation. The record is also clear, the corporation never acquired any other assets. The Exxon contracts, which have previously been held by this Court to be the separate property of Albertha Acosta, formed the essence of the business. The record and prior appellate holding of Succession of Arthur Acosta, supra, clearly support the Trial Court’s conclusion that Martinez has no ownership interest in the Exxon contracts.
Upon finding that the corporation never became an operative entity, the Trial Court ordered the return of the six thousand dollar initial capitalization to Martinez. The Trial Court noted that Martinez had been fully compensated for his services as an employee of the business. John Martinez argues that, as one-half owner of the corporation, he is entitled to a portion of the good will accumulated from the operation of the business because the business used the name Arthur Acosta, Inc. The Trial Court found that more than half of the time in which the corporation’s name was used in the operation of the business, the parties were operating under an agreement pending a determination of the respective ownership interest. In his reasons for judgment, the Trial Judge explained, “[Ajfter Mr. Martinez asserted that he owned an interest in the distributorship business subsequent to Mr. Acosta’s death, counsel for the Succession for the executors, for Mrs. Acosta and for Mr. Martinez met and agreed to continue operating the business the way it had been prior to that time until such time as the determination was made by the court regarding the respective ownership interest of the parties in the business. A temporary agreement was also made with the stipulation that it would not prejudice anyone’s claim to ownership. Under that agreement, Mrs. Acosta continued to handle the business books and records from the Summer of 1979 through June of 1981, when the business went into liquidation, and Mr. Martinez continued to make deliveries to the customers and collect payments from them.”
We agree with the Trial Court that use of the corporate name pursuant to this agreement cannot be relied on by either party to assert that the corporation established good will during that time. Additionally, the owner of an asset or business is the owner of the good will generated through the asset or business. And Martinez may not claim an ownership interest *1184 in the good will generated by the Exxon contracts, which have been held to be the separate property of Albertha Acosta. Any good will generated through the contracts after Arthur Acosta’s death belongs to Alb-ertha Acosta.
In conclusion, we find that Martinez contributed six thousand dollars to the capitalization of a corporation, Arthur Acosta, Inc. The corporation failed in its purpose; it never became the embodiment of the distributorship business owned by the Acostas. After the incorporation, the parties continued to run the business as a sole proprietorship and Martinez was compensated for his services as an employee. The essence of the business, the Exxon contracts, are not corporate assets but belong to Albertha Acosta individually. Any good will derived through these contracts belongs to Albertha Acosta. Accordingly, we affirm the judgment of the Trial Court which ordered the return of the six thousand dollar contribution toward the corporate capitalization to Martinez.
For the reasons discussed above, we affirm the judgment of the Trial Court.
AFFIRMED.