565 So.2d 502 (1990)
Michael G. KARAGEORGE and Mardelle Karageorge, Plaintiffs-Appellees,
v.
George N. COLE, Jr. and Delores Mai Burns Cole, Defendants-Appellants.
No. 21510-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*504 Larry S. Butler, Betty J. Lee, Shreveport, for defendants-appellants.
Barry G. Feazel, Shreveport, for plaintiffs-appellees.
Before MARVIN, SEXTON and LINDSAY, JJ.
*505 LINDSAY, Judge.
The defendants, George and Delores Cole, appeal a trial court judgment ordering them to pay, subject to a set-off, the balance due on a promissory note executed in favor of the plaintiffs, Michael and Mardelle Karageorge. We affirm.

FACTS
Michael Karageorge was the owner of a diner known as Carter's Grill located in downtown Shreveport. In March, 1987, Mr. Karageorge sold the diner to the defendants, George and Delores Cole. The total purchase price was $25,000. The sale was executed under the Bulk Sales Act, LSA-R.S. 9:2961 et seq. The sale did not include the building in which the business was located. However, the plaintiffs sold all the fixtures and equipment contained in the restaurant. The equipment included a commercial dishwasher, two refrigerators, a coffeemaker, a refrigerated pie box, a refrigerated sandwich box, a milk dispenser, a tea dispenser and a juice dispenser. The sales agreement reflected that Mr. Karageorge was the owner of all these items.
The defendants paid $9,000 in cash and executed a promissory note in favor of the plaintiffs in the amount of $16,000, payable in monthly installments of $300 each. The defendants then took possession of the premises.
Shortly after the sale was consummated, it was determined that a ventilation hood in the kitchen required repair. Therefore, the parties agreed that Mr. Karageorge would forgive five payments at $300 each to compensate for this problem.
The defendants made several payments on the note. However, the defendants stopped making payments after allegedly finding that some of the equipment listed in the sales agreement was leased equipment which was not owned by Mr. Karageorge. It was also determined that Mr. Karageorge had numerous outstanding debts in connection with the business, there were defects in some of the equipment and there were defects in the building itself.
Upon the defendants' failure to pay the promissory note, the plaintiffs filed suit to recover the balance due, plus interest, costs and 15% attorney fees. The defendants answered and filed a reconventional demand for diminution of the sales price, alleging numerous problems and misrepresentations in the bulk sales agreement.[1]
Trial on the merits was held on November 10, 1988. At trial, the defendants admitted that they ceased making payments on the promissory note shortly after taking over the business. However, the defendants contended that due to defects in the building and problems with the equipment, and because Mr. Karageorge left many outstanding debts among restaurant suppliers who, in turn, would not extend credit to the business, they were entitled to a reduction in the price which they paid for the business.
Following the trial, the trial court handed down written reasons for judgment. The trial court found that the defendants admitted they had defaulted on the promissory note. Accordingly, the defendants were ordered to pay the plaintiffs the remainder due on the promissory note, plus interest and attorney fees in the amount of $2,000.
However, in addressing the defendants' reconventional demand, the court then found that the defendants were entitled to certain credits. The court found that the dishwasher, which the defendants thought they had purchased, was not owned by the plaintiffs. The court allowed the defendants a $2,000 credit for the dishwasher. The trial court also determined that due to the difficulties which the defendants experienced with some of the plaintiffs' creditors following the sale, the defendants were entitled to an award of damages in the amount of $2,000 for loss of business standing and reputation in the community.
The trial court found that the parties agreed that five monthly payments on the note would be forgiven. The trial court *506 also awarded attorney fees to the defendants in the amount of $3,000. All these sums found by the trial court to be due to the defendants were credited against the balance due on the note. Costs were assessed one-half to the plaintiffs and one-half to the defendants. The trial court signed its judgment on May 8, 1989.
The defendants suspensively appealed the trial court judgment. The plaintiffs neither appealed nor did they answer the appeal. The defendants contend the trial court erred in ordering them to pay the balance due on the promissory note, subject to credits, and erred in ordering them to pay $2,000 in attorney fees, in light of Mr. Karageorge's bad faith in making the sale. The defendants also argue the trial court awarded too little in damages. The defendants contend they were entitled to more than a credit of $2,000 for the equipment which was not owned by the plaintiffs. They also contend that they were entitled to an award of more than $2,000 for loss of business reputation and embarrassment.

THE PROMISSORY NOTE
The defendants argue that the trial court erred in ordering them to pay the principal balance due on the promissory note in the amount of $14,619.26, plus interest and $2,000 in attorney fees. This argument is meritless.
In a suit on a promissory note, the note is the foundation for the cause of action. Brass v. Minnieweather, 468 So.2d 611 (La.App. 2d Cir.1985). Where a debtor admits he has not paid the balance due on a promissory note, the holder is entitled to judgment, together with the attorney fees specified in the note. Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970).
Even where the amount of attorney fees to be paid by the maker of a note is specified in the note, the trial court may inquire into the reasonableness of the fee. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Allen v. Burnett, 530 So.2d 1294 (La.App. 2d Cir.1988).
In this case, the court first considered the plaintiffs' suit against the defendants for the balance due on the promissory note, plus interest and attorney fees. Under the terms of the note, upon nonpayment of the installments when due, the balance of the note, plus interest and attorney fees, became immediately due and payable. At trial, the defendants admitted failing to make the installment payments which were due. Therefore, the trial court was correct in finding that the defendants owed the plaintiffs $14,619.26, the principal balance due on the note, plus interest.
However, the defendants contend that they should have been granted a reduction in the amount due on the note because of problems with the sale which they alleged in their suit for diminution of the sale price. As will be discussed hereafter, the trial court did find that the defendants were entitled to an award for damages. This damage award offset the amount owed by the defendants on the promissory note and is reflected in the final judgment. Nevertheless, this does not alter the fact that the promissory note was not paid pursuant to its terms and therefore the full balance became due upon demand. The amount of damages awarded by the court against the plaintiffs will be discussed below.
The defendants further argue that the trial court erred in allowing the plaintiffs any award for attorney fees because the plaintiffs were in bad faith in making the sale. This argument is meritless.
At trial, the plaintiffs' attorney presented evidence regarding the time spent and attorney fees earned in his efforts to collect the balance due on the promissory note. No fees were claimed in defense of the defendants' suit for a reduction in the sale price. Therefore, based upon the clear terms of the promissory note, the plaintiffs were entitled to attorney fees to collect on the delinquent promissory note. The trial court determination that $2,000 was a reasonable amount of attorney fees is not clearly erroneous and will not be reversed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); *507 Canter v. Koehring, 283 So.2d 716 (La. 1973).

REDUCTION IN PRICE
The defendants' main argument relates to their claim that they are entitled to a reduction in the sale price of the business. Specifically, the defendants contend that the equipment which was purchased and the restaurant's good will in the business community were not as represented by the plaintiffs and therefore the defendants were entitled to a reduction in the sale price.
The defendants argue that several items of equipment included in the inventory list attached to the bulk sales agreement were not owned by the plaintiffs. They argue that some other items of equipment did not function adequately and required either replacement or repair. They further argue that the leased building within which the business was located contained numerous defects. The defendants also contend that the plaintiffs had numerous outstanding debts to restaurant suppliers and that, as a consequence of these debts, the defendants were unable to obtain credit from suppliers. Based upon all these factors, the defendants contend they are entitled to a significant reduction in the price of the business.
Based upon the evidence adduced at trial, the trial court found that a commercial dishwasher which the plaintiffs purportedly sold to the defendants was not owned by the plaintiffs, but was in fact leased. Therefore, the trial court awarded the defendants $2,000 for this item. The trial court also awarded the defendants $2,000 in damages for loss of business reputation caused by the past due bills owed by the plaintiffs. The court also awarded the defendants $3,000 in attorney fees in connection with bringing their suit for reduction of the sale price.
On appeal, the defendants argue that the trial court award was excessively low. This assignment of error is meritless.

Items Not Owned
The defendants contend that several items of equipment listed in the bulk sales agreement which were to be conveyed to the defendants were not actually owned by the plaintiffs. These items included a commercial dishwasher, a tea dispenser, a juice dispenser, a milk dispenser and a coffee maker. The defendants' action against the plaintiffs for the sale of these items is governed by LSA-C.C. Art. 2452 which provides: "The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person."
At trial, the defendants presented proof that the dishwasher was not, in fact, owned by the plaintiffs, but was leased to them on a monthly basis. This dishwasher had been installed in the business in 1981. The record shows that the price of a new dishwasher was approximately $2,700. At trial, Mr. Karageorge admitted that he did not own the dishwasher. He stated that it was a mistake to include this item in the bulk sales agreement. He explained that the mistake was made because he is not a native born American and is not skilled in reading and writing the English language. Therefore, a friend, who is more adept at reading and writing English, prepared the inventory of the business. This friend did not know that the dishwasher was only leased, rather than owned, and mistakenly included it in the inventory.
The trial court awarded the defendants $2,000 as reasonable compensation for the dishwasher. This amount was within the trial court's discretion and will not be disturbed.
The defendants further contend that other items were listed on the inventory which were not owned by the plaintiffs. They contend that some allowance and reduction in the sale price should be made for these items as well.
The first contested item is a coffee maker which the defendants claim was not owned by the plaintiffs. At trial, the defendant, Mrs. Cole, testified that following the sale, one of the restaurant's suppliers threatened to repossess the coffee maker. *508 This testimony was not corroborated. To the contrary, Mr. Karageorge testified that he bought the coffee maker and had owned it for approximately 15 years. This item was not discussed by the trial court in its written reasons for judgment, but it may be inferred that the trial court believed that Mr. Karageorge actually owned this item. We find no error in the trial court's resolution of this issue.
The defendants also contend that the tea, juice and milk dispensers were not owned by the plaintiffs. The trial court denied recovery for these items.
Mrs. Cole testified that the milk dispenser was still in the business and was being utilized. The defendants presented no evidence that a monthly rental payment was required for this item. No evidence was offered showing that anyone else claimed ownership of this item. Mr. Karageorge testified that the milk dispenser was furnished by a milk supplier and that after many years of doing business with this supplier, the dispenser was donated to Mr. Karageorge. We find no error in the trial court's denial of a credit for the milk dispenser.
As to the juice and tea dispensers, Mr. Karageorge admitted that he did not own these items. The juice and tea dispensers were furnished by food suppliers in exchange for use of their products. As long as these products were purchased, the dispensers remained in the business. The defendants offered no evidence as to the value of these items. (They were not separately valued on the inventory of equipment sold with the business.) No evidence was produced showing that the defendants suffered any loss on these items. Because the defendants failed to furnish any proof of value, or proof of any damage suffered by them, the trial court did not err in failing to make an award for these items.

Defective Equipment and Building
The defendants argue that several items of equipment, although owned by the plaintiffs and included in the sale, did not function properly and were in need of repair. The defendants contend that these items have redhibitory defects which entitle the defendants to a reduction in the price of the business.
LSA-C.C. Art. 2520 defines redhibition as the avoidance of the sale on account of some vice or defect in the thing sold which renders it absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the defect. Robinett v. Sears, Roebuck and Co., 485 So.2d 953 (La.App. 5th Cir.1986), writ denied 488 So.2d 204 (La.1986). The seller of the thing is bound by the implied warranty that the thing is free of hidden defects and is reasonably fit for the product's intended use. Sanders v. Sanders Tractor Co., Inc., 480 So.2d 913 (La.App. 2d Cir.1985). This warranty applies to the sale of used things as well as new things although it is not as extensive. It is required that used things operate reasonably well for a reasonable period of time. Wagnon v. Hebert, 520 So.2d 1136 (La.App. 3rd Cir.1987).
In some instances, rather than requiring a rescission of the sale, the buyer may instead demand a reduction of the sale price. LSA-C.C. Art. 2541 provides that whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price. Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3rd Cir.1987), writ denied 515 So.2d 1107 & 1108 (La.1987).
To maintain an action for the reduction of price, the buyer must prove that the vice or defect complained of existed before the sale. Linch International Trucks, Inc. v. Pierre, 434 So.2d 1225 (La. App. 1st Cir.1983). The burden of establishing the amount of any reduction in the purchase price to which a buyer is entitled is upon the buyer. Sanders v. Sanders Tractor Co., Inc., supra; Allen v. Burnett, 530 So.2d 1294 (La.App. 2d Cir.1988). The decision to grant a reduction in price is based on a factual determination that the *509 defect does not render the thing sold useless or totally unsuited to its purpose. Sanders v. Sanders Tractor Co., Inc., supra.
The proper measure of damages in an action to reduce the sale price is the difference between the actual sale price and the price a reasonable buyer and seller would have agreed upon, if they had known of the defect. Lusk v. Durham Pontiac-Cadillac, Inc., 459 So.2d 1277 (La.App. 1st Cir.1984). The trial court has reasonable discretion to assess the amount of recovery in reduction cases, based upon all facts and circumstances, and its award will not be modified in the absence of clear abuse. Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577 (La.App. 1st Cir.1982); Austin's of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2d Cir.1985).
In the present case, the defendants contend that several items of equipment had redhibitory defects. These items included two refrigerators, a pie case, and a sandwich box. The defendants contend that freon leaks were found in this equipment and each item frequently had to be charged with freon. Therefore, the defendants contend that the trial court erred in failing to grant a reduction in price for these items.
In applying the principles of redhibition and reduction in price to the present record, we find that the defendants failed to carry their burden of proving entitlement to a reduction in price. Mr. Karageorge testified that he informed the defendants of the freon leaks in the refrigeration equipment. The record also shows that Mr. Karageorge spent $600 to repair one of the refrigerators shortly after the business was sold to the defendants. The defendants contend that the refrigerator did not function properly after these repairs. Mrs. Cole testified that the compressor on this refrigerator ceased functioning and the defendants spent "around $200" to repair the refrigerator. However, the defendants failed to show the cause of this problem or exactly how long after the sale the refrigerator ceased functioning. Also, the defendants did not present any evidence by way of invoices, expert testimony or estimates to precisely show the amount of the repair costs.
The defendants also claimed that another refrigerator in the business ceased functioning altogether and was replaced with a household refrigerator which cost approximately $300. Here again, the defendants failed to show exactly how long after the sale this refrigerator ceased functioning or why it ceased to function. They also failed to provide evidence, such as invoices, estimates or expert testimony, to show the exact cost of replacing this refrigerator.
The defendants testified that the pie case and the sandwich box required repairs of $650 each. However, this testimony was uncorroborated and was apparently rejected by the trial court.
The record shows that all of this equipment had been used in the restaurant for many years. It is not clear what inspections were made prior to the sale or whether any of the alleged defects were discoverable upon inspection. Nor is it clear that the freon leaks rose to the level of redhibitory vices.
As discussed above, the buyer has the burden of proving the existence of redhibitory defects and the amount of resulting damages. Based upon the record before us, we find that the trial court was correct in denying the defendants a reduction in the sale price for these items.
The defendants also argue that there were numerous defects in the building in which the business is located. Therefore, they contend that they should be granted a reduction in the sale price sufficient to cover the cost of repairs.
The defendants contend that one side of the double doors at the front of the business would not open. They also contend that the building had no heating equipment. The defendants further claim that during heavy rainfalls, the building floods.
With the exception of the front door, which Mrs. Cole claimed would cost $700 to repair, the defendants made no showing of the cost of repairing these defects, even if it were demonstrated that such repairs were necessary. However, based upon this *510 record, these items do not appear to be hidden defects. An inspection of the premises would have revealed the problem with the front door and the lack of heating equipment. As to the flooding of the building, there is disputed testimony in the record concerning the severity of the problem.
More importantly, we note that the sale of this business did not include the building. The record shows that the building was owned by and rented from Mr. H.B. McGuffen. It appears that any defects in the building would be the responsibility of the lessor.
At trial, Mr. McGuffen testified that Mr. Karageorge owed approximately $350 in past due rent. The defendants claimed that, because Mr. Karageorge owed past due rent, Mr. McGuffen refused to make repairs to the building. However, Mr. McGuffen testified that he had made some unspecified repairs to the building and that the costs for these repairs to the building were deducted from the rent owed by the defendants.
Therefore, based upon the evidence contained in the record, we do not find that the trial court erred in refusing to allow the defendants a reduction in the purchase price due to defects in the building.

Loss of Good Will
The defendants also argue that the good will of the business, formerly operated by Mr. Karageorge, was one of the elements included in the sale. They argue that Mr. Karageorge represented that he had no outstanding debts at the time the business was sold. The defendants contend that Mr. Karageorge did, in fact, have numerous outstanding business debts and that Mr. Karageorge's failure to pay these debts affected the good will and reputation of the business among restaurant suppliers.
Good will is the value of a business over and above the value of its physical property. Succession of Jurisich, 224 La. 325, 69 So.2d 361 (1953). Good will includes every positive advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, with the name of the old firm, or with any other matter carrying with it the benefit of the business of the old firm. J. Alfred Mouton, Inc. v. Hebert, 199 So. 172 (La.App. 1st Cir.1940).
The owner of an asset or business is the owner of the good will generated through the asset or business. Succession of Acosta, 439 So.2d 1181 (La.App. 4th Cir.1983), writ denied 443 So.2d 588 (La. 1983).
Good will is an asset that may be the subject of a valid sale. Desselle v. Petrossi, 207 So.2d 190 (La.App. 4th Cir. 1968), writ denied 209 So.2d 39 (La.1968). The sale of good will carries with it the warranties accompanying other sales of things. If good will is a substantial asset conveyed in a sale and the buyer is deprived of that asset, then the buyer may be entitled to cancel the sale and recover the price. J. Alfred Mouton, Inc. v. Herbert, supra. In the present case, the defendants have only requested a reduction in the price. The record shows that the defendants were not totally deprived of the good will of the business. However, the defendants showed that, due to plaintiff's failure to timely pay bills, the business suffered damage to its business reputation among restaurant suppliers. Accordingly, the trial court awarded the defendants $2000 for this damage. The defendants argue that this award by the trial court was excessively low.
The record shows that prior to the sale, Mr. Karageorge had been operating the restaurant under the name of Carter's Grill. After the sale, the defendants continued operating the business under the same business name as that used by Mr. Karageorge. Initially, some of Mr. Karageorge's creditors, apparently being unaware of the sale, requested payment of outstanding debts from the defendants and refused to extend credit to them. However, the record also shows that in every instance, when creditors were apprised of the fact that there had been a change in the ownership of the business, the creditors *511 sought payments of outstanding debts from Mr. Karageorge, rather than from the defendants. In no instance were the defendants required to pay debts owed by Mr. Karageorge.
The court recognized that the initial confusion among Mr. Karageorge's creditors caused some damage to the defendants' business reputation and awarded $2,000 for these damages. Our review of the record reveals that the trial court's award was clearly within the bounds of its discretion and was not excessively low. Therefore the defendants' argument in this regard is meritless.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court granting the plaintiffs recovery of the principal balance due on the promissory note, plus interest and attorney fees. We also affirm the trial court judgment in favor of the defendants, against the plaintiffs, for $2,000 for equipment not owned by the plaintiffs, $2,000 for loss of business reputation and $3,000 in attorney fees.
The trial court's apportionment of costs, one-half to the plaintiffs and one-half to the defendants, is also affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED.
NOTES
[1] The defendants had originally filed a separate suit for reduction in the sale price. The cases were consolidated for trial.