600 So.2d 125 (1992)
ANTHONY'S AUTO SALES, INC., Plaintiff-Appellant,
v.
Linda SHEPHARD, Defendant-Appellee.
No. 23492-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*126 J. Philip Goode, Jr., Shreveport, for plaintiff-appellant.
Desmond McGinn, Shreveport, for defendant-appellee.
Before NORRIS, LINDSAY and VICTORY, JJ.
VICTORY, Judge.
This suit was instituted by Anthony's Auto Sales, Inc. (Anthony's) in the form of an executory process on a used car sold to Linda Shephard (Shephard). The foreclosure was based on Shephard's alleged breach of the security agreement to provide full insurance coverage. Following seizure of the car, Shephard reconvened seeking damages for wrongful seizure and rescission of the sale based on redhibition. The trial court denied damages, but granted rescission of the sale, and Anthony's appealed. We affirm.

FACTS
On March 23, 1990, Shephard bought a 1981 Lincoln Mark VI automobile from Anthony's Auto Sales, Inc. At the time of purchase, the car had an odometer reading of 107,827 miles. The purchase price plus tax and license totaled $5,443.60 on which she paid $1,400 as a downpayment and applied her trade-in value of $700. The balance, $3,343.60, was financed through the seller, as evidenced by the Security Agreement and Promissory Note executed by the parties.
The sales agreement required Shephard to maintain insurance on the vehicle in order to protect Anthony's, the lien holder. Jimmy Anthony, brother of Charles Anthony, the owner of the car dealership, sold insurance from an office on the premises of the dealership. Following the sale of the car, Jimmy sold Shephard liability insurance with comprehensive and collision coverage.
The next day, March 24, the engine stalled in traffic and Shephard immediately *127 contacted Anthony's. Herbert Pullman, Shephard's ex-boyfriend, took the car back to the dealer for repairs on March 28, and picked it up on April 4. On April 6, Shephard experienced the same problems and took it back for repair. According to Shephard, she brought the car back to Anthony's a total of eleven times before they refused to perform any more repairs.
Meanwhile, Shephard failed to pay her insurance premiums, and as a result, her policy was cancelled on May 3. Although Shephard subsequently purchased a liability policy with another agent, she obtained no comprehensive or collision coverage. When Charles Anthony, the owner of the dealership, realized the car was not properly insured, he filed suit to foreclose on the car for breach of the security agreement and had the car seized. Shephard then filed a reconventional demand for wrongful seizure, injunctive relief, and rescission of the sale on grounds of redhibition. A preliminary injunction was subsequently granted enjoining the sale pending trial.

TRIAL COURT'S RULING
This case was tried in Shreveport City Court on December 7, 1990. The trial judge found a redhibitory vice which manifested itself within three days of the sale, and which rendered the vehicle so imperfect and inconvenient that the buyer would not have purchased it had she known of the defect. The judge also found Anthony's to be a good faith seller, and rejected damages for wrongful seizure because Shephard failed to maintain insurance on the car as required by the security agreement. The court's judgment rescinded the sale and ordered Anthony's to return the purchase price to Shephard, less the remaining balance on the loan and subject to a credit of $500 payable to Anthony's for her use of the car.
Anthony's appealed the judgment claiming the trial court erred in failing to find that defendant waived her right to claim redhibition when she executed a waiver of warranty agreement at the time of sale. In the alternative, appellant claims the trial court erred in finding sufficient evidence of a redhibitory vice.[1]

WAIVER OF WARRANTY
In Louisiana, the seller is bound by an implied warranty that the thing he sold is free of hidden defects and is reasonably fit for the product's intended use. LSA-C.C. Arts. 2475, 2476, 2530; Rey v. Cuccia, 298 So.2d 840 (La.1974). This warranty is applicable to the sale of used, as well as, new merchandise. Although the warranty is not as extensive for used merchandise, it does require that the merchandise operate reasonably well for a reasonable period of time. Hob's Refrigeration & Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974); Karageorge v. Cole, 565 So.2d 502 (La.App.2d Cir.1990).
The parties are free to limit or diminish, by express agreement, the warranty imposed by law. Hendricks v. Horseless Carriage, Inc., 332 So.2d 892 (La.App.2d Cir.1976). In order for a waiver of warranty to be effective, three elements must be present:
1. The waiver must be clear and unambiguous;
2. The waiver must be contained in the sale and mortgage document; and
3. The waiver must either be brought to the attention of the buyer or explained to him.
Sanders v. Sanders Tractor Co., Inc., 480 So.2d 913 (La.App.2d Cir.1985); Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1973). The seller bears the burden of proving that the warranty has been waived. Monk v. Oakdale Motors, Inc., 544 So.2d 98 (La.App. 3d Cir.1989).
The evidence revealed that six documents were executed in relation to the sale of the vehicle. In a document entitled "Auto Sales Disclaimer of Warranty," the dealer disclaimed all warranties including any implied warranty of fitness for a particular purpose. Jeri Byrd, Anthony's sales manager, referred to this document *128 as the Bill of Sale. It lists the make and model of the vehicle sold, the sales price, the amount to be financed, and is signed by Shephard. The parties also executed a "Non-guarantee Used Car Agreement" in which Shephard accepted the car without guaranty as to year, model, or mechanical condition and agreed not to hold the dealer liable for future problems. Another document entitled "Combination Promissory Note, Truth in Lending Disclosure Statement and Security Agreement" evidences the sale of the car and the financing terms applicable to the balance, but contains no waiver of warranty language.
After viewing the foregoing documents, it is apparent that (1) the waiver of warranty provisions were in clear and unambiguous terms, and that (2) the waiver was contained in the sale document. At issue is whether the waiver was brought to Shephard's attention or explained to her.
Shephard testified that she did not read the waiver of warranty provisions, but instead was presented with a stack of documents which she signed without reading. She claimed neither Byrd nor the salesman, Jay Hopkins (now deceased), explained the warranty provisions to her. Instead, she stated that both Byrd and Hopkins repeatedly assured her that the warning of no warranty meant nothing because Anthony's "stands behind their cars" and would take care of any problems she might have. According to Shephard, she would not have bought the car had she known Anthony's would not be liable for any defects.
On the other hand, Jeri Byrd testified she prepared all the documents and explained each to Shephard. During trial the following colloquy took place between defense counsel and Byrd:
Q. Excuse me. On the first form P-1 ["Auto Sales Disclaimer of Warranty"], did you read the language to her where it says Anthony's Auto Sales, all warranties on this vehicle or the manufacturer
A. What I said is what I say to everybody. This paragraph right here is an "as is statement." You will need to read it before you sign it. And hopefully they read it before they sign it.
Q. Did you specifically ask her, "do you understand everything contained in this document"?
A. No sir, I probably didn't.
From the record, it is clear that Byrd was testifying as to her common practice when executing sales documents, not as to her specific recollection of this particular sale. The person listed on all the documents as a witness to the transaction, Joah Jett, was not called to prove the warranty was explained or brought to the attention of the buyer. According to the above testimony of Byrd, the warranty provisions on the bill of sale were not explained to Shephard, and she did not know if Shephard understood them.
Although the trial court, in its written reasons, did not make reference to the waiver of warranty, we find that the judge rejected Anthony's affirmative defense of waiver. In the absence of an express reservation, the silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand. Ernst v. Bassett, 521 So.2d 414, 415-416 (La.App. 5th Cir.1988). Although Byrd testified she explained all the documents, the trial court apparently accepted Shephard's testimony that she was verbally assured Anthony's would remedy any problems with the vehicle occurring within a reasonable period of time after the sale. From the judge's implied rejection of Anthony's affirmative defense, we conclude that he either rejected Byrd's testimony or found that Anthony's verbal assurances modified the written warranty disclaimer. In either case, we will not disturb the trial court's evaluation of testimony in that it is not clearly erroneous. Lloyd v. TG & Y Stores, Co., 556 So.2d 629 (La.App. 2d Cir.1990). Thus, Shephard did not waive the implied warranty of fitness guaranteed by law.

REDHIBITION
In written reasons, the trial court found the car to have a redhibitory vice which rendered the vehicle so imperfect and inconvenient *129 that the buyer would not have purchased it had she known of the defect.
Louisiana law allows a buyer to avoid a sale on account of some vice or defect in the thing sold. To prevail in a redhibitory action, a plaintiff must establish by a preponderance of the evidence that: (1) the thing sold had some vice or defect which rendered it absolutely useless or its use so inconvenient or imperfect that had he known of the defect, he would have never purchased it; (2) the defect existed at the time of the sale, but was not apparent; and (3) the seller was given an opportunity to repair the defect. LSA-C.C. Art. 2520; Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5th Cir.1989). If the vice or defect appears within three days immediately following the sale, it is presumed to have existed before the sale. LSA-C.C. Art. 2530.
Appellant argues the court incorrectly concluded that the vehicle contained a redhibitory defect. Curtis Williams, a mechanic at Wico Automotive, performed repairs on this car before and after the sale. On March 7, 1990, prior to the sale, Williams replaced several electronic fuel injection parts to remedy a "loss of power and speed." On April 3, after the sale, the car was returned to Williams with complaints that the car "would not run." He testified that low fuel (one-eighth of a tank or less) could cause this car to stall, but did not testify that the car was ever low on fuel when he worked on it. Charles Anthony testified that Shephard's car was on empty each time she brought the car in for repairs. He claims that after filling the car up with gas, the car worked properly.
However, Shephard testified the fuel light never came on while she drove the car. (The fuel light comes on 19 miles before empty). Herbert Pullman testified that they had already filled up with gas when the car stalled the first time, only one day after the sale. In addition, he recalled filling up with gas for a trip to Texas and the car stalling several miles out of Shreveport. Shephard specifically recalled having a full tank when Pullman brought the car back to Anthony's for the first repair on March 28.
Shephard testified that the car, which was used for transportation, could not be depended on for its intended purpose. According to Dale Carter, who rides to work with Shephard, the Lincoln stalled five or six separate times causing considerable delays on workdays. Shephard testified the car stalled in traffic the day after the sale, March 24. Debra Terry, Shephard's cousin, further corroborated Shephard's testimony by stating she saw the car stalled on the highway and immediately called Shephard to see if it was her car. Although only one repair receipt was offered by Shephard, she claims she returned the car a total of eleven times before Anthony's refused any more repairs. Although Mr. Anthony disputed much of Shephard's and her witnesses' testimony, we must conclude the trial judge apparently accepted their statements as true. The trial court's evaluation of credibility will not be disturbed on appeal because it is not clearly erroneous.
Shephard did not need to prove the precise cause of the defect so long as she showed, by direct or circumstantial evidence, that the thing contained a defect and the defect existed at the time of the sale. Reilly, supra, (where a used car that sputtered, hesitated and stalled on numerous occasions was found to have a redhibitory defect.) Based on the evidence presented at trial, the court found that "such stalling out of the vehicle in traffic constituted a redhibitory defect rendering the use of the vehicle so inconvenient and imperfect" that Shephard would not have purchased it had she known of the vice. Shephard sufficiently proved the defect appeared the day after the purchase of the car, thereby availing herself of the presumption in LSA-C.C. Art. 2530. Lastly, Shephard offered evidence, apparently accepted by the trial judge, that the dealership was given ample opportunity to repair the defect and failed to do so.
The standard of appellate review of facts as stated by the Louisiana Supreme Court in Canter v. Koehring, 283 So.2d 716, 724 (La.1973) is as follows:

*130 When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.
Although we might have decided the case differently, we find no manifest error in the trial court's finding that the car contained a redhibitory defect unknown to Shephard at the time of the purchase. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Wheeler v. Clearview Dodge, Inc., 462 So.2d 1298 (La.App. 5th Cir.1985).

DECREE
Accordingly, we affirm the trial court's judgment at appellant's cost.
AFFIRMED.
NOTES
[1] Although appellee argues in brief that Anthony's was in bad faith, and thus, responsible for attorney's fees and damages, appellee failed to appeal or answer the appeal.