665 So.2d 787 (1995)
BO-PIC FOODS, INC.
v.
POLYFLEX FILM AND CONVERTING, INC.
No. 95 CA 0889.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
*788 Marvin Gros, Donaldsonville, for Plaintiff-Appellant Bo-Pic Foods, Inc.
E. Robert Sternfels, Napoleonville, for Defendant-Appellee Polyflex Film and Converting, Inc.
Before SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.
In this appeal, buyer and seller dispute whether buyer is entitled to recover the purchase price of a metalized film paper ("film") purchased for bagging potato chips, which was found not suitable for that purpose. The trial court dismissed plaintiff's claims against defendant after determining plaintiff failed to carry its burden of proving a redhibitory defect. We reverse.

FACTS
Plaintiff-appellant, Bo-Pic Foods, Inc. ("Bo-Pic"), filed suit against defendant-appellee, Polyflex Film and Converting, Inc. ("Polyflex"), seeking to recover $7,152.45, the price paid for the film.[1] The petition asserts 1) the film was sold by defendant's sales representative to meet the requirements and specifications of plaintiff for containment of plaintiff's products; 2) upon receipt of the film, Bo-Pic immediately determined the product did not meet it's requirements and specifications for the intended use of the film and was not in accordance with the representations made by Polyflex's sales representative; 3) the product was returned to Polyflex; 4) payment for the product was made in error by Bo-Pic; and 5) Polyflex has refused to refund the purchase price upon plaintiff's demand. In answer to the petition, Polyflex admitted 1) the film was sold by its sales representative to meet Bo-Pic's requirements and specifications for containment of its products and 2) the invoiced sale price of the film was paid by Bo-Pic and not refunded by Polyflex.
Representatives for both Bo-Pic and Polyflex testified during the trial of this matter.[2] *789 Mr. Walter Kimbrel, who was a customer sales and service representative for Polyflex, testified that Polyflex sold printed cellophane roll stock to Bo-Pic during 1987 and 1988, which was used by Bo-Pic for bagging chips and popcorn. The orders were frequently placed by Bo-Pic through Mr. Quentin Sharp, an independent broker, who sold products for Polyflex on a commission basis.
Kimbrel testified he handled "anything that required technical specifications for manufacture within the plant," while Sharp handled the "leg work" or "direct calls on the customer." Kimbrel explained technical information was required to service the Bo-Pic account with respect to the types of films used for various products, the type and size of printing cylinders used, the acquisition of printing plates and delivery schedules. Kimbrel acknowledged he had visited Bo-Pic on occasion to examine its equipment.
Kimbrel handled the order which is the subject of this dispute. He explained Polyflex had been supplying Bo-Pic with a cellophane film manufactured by another company. During the latter part of 1986 or during 1987, Kimbrel had several discussions on the telephone with Robert Bourg, Bo-Pic's president, regarding another type of film to be used for bagging the chips. Kimbrel explained Bourg was looking for a product that would be less expensive than the one he was using. The alternative product discussed was a fairly new product on the market, a light gauge metalized material, which had not been previously handled by Polyflex. This film was manufactured by Mobil Films ("Mobil"). Kimbrel testified the initial request for information regarding the film came from Bourg.
Since the new product had not been tested by Bo-Pic, Kimbrel advised Bourg to order a sample of the film. However, before the sample was received, Bourg placed an order for five hundred pounds of the film and later increased the order by an additional five hundred pounds. Kimbrel acknowledged that although a sample had been ordered, there was a long delay in receiving it. Some time after the order was placed, Kimbrel received a small sample tear sheet of the film and a specification sheet from Mobil regarding the film. According to Kimbrel's testimony, when he received the sample he became concerned the film would not be suitable for Bo-Pic's use in bagging potato chips because it was very thin.
Kimbrel testified he wrote a letter to Bourg which acknowledged the film had been ordered and expressed concern about the product.[3] Kimbrel further testified the specification sheets for the metalized film and the sample of the metalized film were provided to Bourg, and Shaw and Kimbrel advised Bourg the order could be canceled at that time.
Polyflex delivered the metalized film to Bo-Pic during January of 1988. Within a few days, Bourg contacted Kimbrel complaining of problems with the film. A meeting was held at the Bo-Pic plant, which was attended by Bourg, Kimbrel, Sharp, Ricky Briggs, a technical service representative from Mobil, and Stephen Schexnayder, an employee of Bo-Pic. Bourg had reported the film was too thin to run on the equipment, was too thin to hold the potato chip product and was not sealing. Briggs made some adjustments to Bo-Pic's equipment and was able to get the film to run on it. Since an ink scuffing problem remained, Polyflex agreed to varnish overprint the film. After this additional processing was completed, Bo-Pic returned the film claiming it was unusable. Kimbrel stated he was not sure why the product was not usable, but recalled some conversations with Bourg regarding moisture vapor transmission rates and oxygen transmission rates which have an effect on shelf life. Kimbrel testified Polyflex did not refund the price of the film or make other attempts to correct the problem.
Kimbrel's testimony was conflicting regarding whether he advised Bourg that the product might not be suitable for Bo-Pic's use prior to the time the order was placed. Kimbrel acknowledged he never told Bourg *790 the film would be bought at his own risk. Kimbrel also acknowledged he had been engaged in the film business for many years, and, in doing business with Bourg, he was aware that Bourg relied to some extent on his expertise in the industry.
Bourg's testimony regarding the events prior to and after the order of the film was very different from Kimbrel's testimony. Bourg testified he had been doing business with Polyflex since 1981 or 1982. Sharp solicited his business and he had not had any major problems with Polyflex's products prior to ordering the new film. Bourg stated he relied on Kimbrel's advice when ordering products from Polyflex. He decided to order the new film, which was less expensive than the product he was currently using, after Kimbrel advised that another potato chip company located in the same geographical region as Bo-Pic was successfully using the product. Because he was low on film inventory, he decided to order the film immediately.
Bourg testified Kimbrel never told him he was buying the product at his own risk. He explained Kimbrel did not tell him the film would not work for bagging potato chips until after the film was ordered and en route to him. Although Bourg acknowledged receiving a letter from Kimbrel advising him that Kimbrel did not think the film was suitable for the purpose intended, Bourg indicated the letter stated the film was en route to Bo-Pic and did not advise the order could be canceled. He believed he had to use the film since it had been ordered. Bourg also stated he was never offered a sample of the film, never received a sample of the film and was never advised by anyone that the order could be canceled.
When Bourg received the film, he could not get it to run on his machinery. After the meeting with Kimbrel and Sharp, Polyflex agreed to put a lacquer coating on the film. After he received and used the coated product, he determined the film was not holding his product; the potato chips were going stale within a four-day period. He stated the standard shelf life for the snack food industry was six weeks. Bourg testified he attempted running a double bag with the film, but found it was not compatible with the other products he had available to him for use in double-bagging. Since Bourg had no use for the film, he returned it to Polyflex. He explained the invoice for the film was paid in error by his father, who handled some of the bookkeeping for Bo-Pic.
Stephen Schexnayder, who worked for Bo-Pic when the film in question was received, testified he was not successful in running the film on Bo-Pic's machinery. He recalled the Mobil representative, Briggs, was able to make a bag after making adjustments to the machinery. He also recalled Briggs had commented that the bag was not designed to be used on its own, but was to be combined with another film to make a bag. After Polyflex coated the film, the product was still not rigid enough to use for storing a product. He testified Bo-Pic's products required a six-to-eight week shelf life, and the film was useless because it did not provide a six-week shelf life. In addition, he explained the end seal and the back seal on every bag were irregular. Schexnayder also testified he did not recall receiving a sample of the film and never heard Kimbrel advise Bourg that he was buying the film at his own risk.
Quentin Sharp testified that during the period in question he was a commission broker who sold products for different companies, his principal supplier being Polyflex. Although Bourg purchased products from Polyflex through Sharp, Bourg sometimes dealt directly with Kimbrel. Sharp believed Bourg bought film exclusively from Polyflex. Sharp recalled Bourg was trying to cut down his packaging costs and requested a less expensive film. Sharp got Kimbrel involved in the selection of the film at that point. Sharp testified he depended on Kimbrel for the technical aspects of the material he sold, describing Kimbrel as an expert. Sharp also testified the commission he was to earn on the new metalized film was greater per pound than the commission he had been earning on the cellophane film Bo-Pic previously used.
Sharp testified that some time after the film was ordered, he provided a four-foot sample piece of film to Bourg and advised the order could be canceled. Sharp acknowledged *791 Bourg never received a sample roll of the film of sufficient size to run on the machinery. After Bourg received the film and had problems running it on his machinery, Sharp recalled a meeting during which some bags were made with the film. During this meeting, Briggs advised Bourg the film was not supposed to be run as a single sheet but was "supposed to be run either insulated or with a liner." Sharp also recalled Briggs indicated the "film was designed for a product like a cookie or bakery product where it would be overwrapped." Sharp was not aware whether this information was provided in the Mobil specifications sheet.

PROCEEDINGS BELOW
The trial judge addressed the allegations set forth in Bo-Pic's petition. He stated he did not hear anything about Bo-Pic's requirements and specifications and did not hear testimony regarding representations made by Polyflex. He recognized there was conflicting testimony about which party approached the other regarding the use of the new film. The trial judge concluded Bourg was the party who was most interested in the new product and once he decided to use the new film, he allowed his warehouse supply of the other film to run down.
The trial court decided the case based on redhibition law, determining the pertinent question presented was "whether or not this metalized product is absolutely useless or whether or not it might be useful for something else other than packaging potato chips." The court acknowledged some testimony showed the film could be used in a cookie box or cracker box and concluded Bo-Pic failed to carry its burden of proving the product "was absolutely useless or so inconvenient or imperfect that it must be supposed the buyer would not have purchased it."
Bo-Pic has appealed contending the trial court "committed an error of law by not properly applying Civil Code Article 2520 on redhibition to plaintiff's inability to use the product for its intended purpose."[4]

ANALYSIS
Under the provisions of La.C.C. art. 2475,[5] a seller warrants the thing which he sells, and under the provisions of La.C.C. art. 2476, the seller warrants there is no hidden defect in the thing sold. Under the provisions of La.C.C. art. 2520, a sale may be avoided where a vice or defect in the thing sold renders it absolutely useless, or so inconvenient and imperfect that it must be supposed the purchaser would not have purchased it had he known of the vice. Based on these articles, our courts have found the seller impliedly warrants the thing sold is free of hidden defects and is reasonably fit for the purpose intended. Hob's Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326, 327 (La.1974), Rey v. Cuccia, 298 So.2d 840, 842 (La.1974); J.B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693, 697 (1949).[6]
Our courts have recognized these warranties can be limited or waived. However, they cannot be regarded as waived in the absence of a clear, unambiguous and express agreement. La.C.C. art. 2474; Hob's, 304 So.2d at 327; Rey, 298 So.2d at 840; Hendricks v. Horseless Carriage, Inc., 332 So.2d 892, 894 (La.App.2d Cir.1976). The seller bears the burden of proving the warranty has been waived. Savannah v. Anthony's Auto Sales, Inc., 618 So.2d 676, 679 (La.App.2d Cir.), writ denied, 626 So.2d 1174 (La.1993); Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428, 432 (La.App. 5th Cir.1989).
The trial court's reasons for judgment establish the court considered redhibition law, but failed to consider the seller's implied warranty of fitness in analyzing this case. The court considered whether the product *792 was absolutely useless, but did not consider whether the film was reasonably fit for its intended purpose. Accordingly, since the trial court's judgment dismissing plaintiff's claims is based on an error of law, we are required to consider this case on a de novo basis. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
The record establishes Bo-Pic had been a customer of Polyflex for a number of years, Kimbrel was familiar with Bo-Pic's operations, and Bourg and Sharp relied on Kimbrel's expertise in the film paper business when making decisions regarding product specifications. The record clearly demonstrates Kimbrel was fully aware Bo-Pic intended to use the metalized film for the purpose of bagging potato chips. We note Polyflex admitted in its answer that the film was sold by its sales representative to meet Bo-Pic's requirements and specifications for containment of its products. Thus, based on the circumstances presented in this case, we find Polyflex warranted the film as suitable for the purpose of bagging potato chips.
The record also clearly establishes the film was entirely unsuitable for the purpose of bagging potato chips. Bourg testified his product required a six-week shelf life, and his product became stale within four days after being bagged in the film. Accordingly, we find plaintiff established Polyflex did not satisfy the implied warranty of fitness in the sale of the film.[7]
However, the warranty of fitness is not owed by a seller when the buyer waives that warranty. Kimbrel and Sharp testified Bourg was advised after the film was ordered it would not be suitable for the purpose intended and the order could still be canceled. However, Bourg testified he was never advised that the order could be canceled. In light of the contradictory testimony regarding whether Bourg had an opportunity to cancel the order after being advised the product might not be suitable for his use and Kimbrel's admission he never advised Bourg he was buying the product at his own risk, we find Polyflex has not carried its burden of establishing Bo-Pic clearly, unambiguously and expressly waived the warranty of fitness.

CONCLUSION
For the above reasons, we reverse the judgment of the trial court and render judgment in favor of plaintiff-appellant, Bo-Pic Foods, Inc., and against defendant-appellee, Polyflex Film and Converting, Inc., in the amount of $7,152.45, plus interest from date of judicial demand, January 19, 1989, until satisfaction of the judgment. The trial court costs and the costs of this appeal are to be paid by Polyflex Film and Converting, Inc.
REVERSED AND RENDERED.
SHORTESS and PARRO, JJ., concur.
NOTES
[1] The parties stipulated the film invoice was paid by Bo-Pic on February 23, 1988.
[2] The parties stipulated that Robert Bourg, the president of Bo-Pic during 1987 and 1988, was a representative of Bo-Pic, and Walt Kimbrel, a former employee of Polyflex, was a representative of Polyflex.
[3] This letter was not introduced into evidence because it was not listed as an exhibit in the pretrial order.
[4] We pretermit another assignment of error raised by plaintiff regarding the burden of proof employed by the trial court.
[5] La.C.C. art. 2475 was amended pursuant to Acts 1993, No. 841, § 1, and became effective on January 1, 1995.
[6] La.C.C. art. 2524, addressing the seller's warranty of fitness, was enacted by Acts 1993, No. 841, Sec. 1, and became effective on January 1, 1995. This article is not applicable to the present case because it was not in effect when the sale of the film occurred.
[7] Polyflex contends it owes no warranty for defects in the film because Bo-Pic was warned about the quality of the film and that it might not be suitable for its intended use, citing La.C.C. art. 2521 regarding a buyer's knowledge of redhibitory defects. Because of the result we reach, we do not address whether the film sold to Bo-Pic was defective.